# LAMOILLE COUNTY.

## April Term, 1841.

PRESENT, Hon. STEPHEN ROYCE,
     "   JACOB COLLAMER,
     "   ISAAC F. REDFIELD,  } *Assistant Justices.*
     "   MILO L. BENNETT,

### State *v.* Volney Gilbert.

The preface to a bill of indictment is no part of the presentment of the grand jury, and may be amended, at any time, so as to conform to the other records of the term.

If wholly omitted, the presentment may nevertheless be sufficient. The minute of the clerk upon the bill, at the time of the presentment, and the general records of the term, will supply any defect in such preface.

The terms, *Anno Domini*, in an information or bill of indictment, are equivalent to *the year of our Lord.* Either is good, and so is the want of either.

In an information for stealing a horse, it is no ground of arresting judgment that the horse is described as being either of a "brown or bay color."

INFORMATION, for horse stealing, filed by the state's attorney against the respondent, in the words and figures following ;—

'STATE OF VERMONT, *Lamoille County, ss.* Lamoille 'County Court, December Term, *Anno Domini,* one thou-'sand eight hundred and forty.

'Be it remembered that Harlow P. Smith, state's attorney 'within and for the county of Lamoille, aforesaid, in his 'proper person, comes into court here and upon his oath of 'office, gives said court to understand and be informed that

'Volney Gilbert, of Elmore, in the county of Lamoille, afore-'said, heretofore, to wit, on the seventeenth day of October, 'A. D., 1840, with force and arms, at Eden, in said county of 'Lamoille, one mare, of a bay or brown color, of the value 'of one hundred dollars, of the goods and chattels of one 'Asa A. Raymore, then and there being found, feloniously 'did steal, take and carry away, contrary to the form, force 'and effect of the statute, in such case made and provided, 'and against the peace and dignity of the state.

                     'HARLOW P. SMITH, state's attorney.'

The respondent pleaded not guilty.

After hearing the testimony, the jury, under the charge of the court, returned a verdict of guilty.

The respondent then moved that judgment be arrested for the following causes ;—

1. Because the information and caption are not in the English language ;

2. Because it does not appear, from the information into what court the state's attorney comes and informs ;

3. Because it does not appear in what year of the world, or of our Lord, the offence charged was committed.

4. Because the mare, charged to have been stolen by the respondent, is described " of a bay or brown color," without alleging definitely what her color was.

The county court overruled the motion, and the respondent excepted to the decision.

*L. P. Poland,* for respondent.

The caption of the information is not in the English language, and therefore is bad by virtue of the statue. See Revised Statutes, page 163, § 31. This statute, so far as criminal proceedings are concerned, must be construed strictly.

It is contended, however, that this case must be considered as decided, and this objection overruled, by the case of *State* v. *Hodgeden,* 3 Vt. R. 481. But we contend that there is a wide and important distinction between them, and that the case in 3 Vt. R. is favorable to this objection, rather than otherwise.

The court, in that case, decided, that the use of *A. D.,* in an indictment, for the words, *in the year of our Lord,* is

good, and this upon the ground that the letters have been used from time immemorial, universally and by common and general consent, for this purpose and meaning.

Now the words *Anno Domini* cannot be considered good, unless they come within the rule] laid down in *State* v. *Hodgeden*.

The court are aware that there are many initials of Latin, and other foreign words, used to express a certain meaning, and though the letters, when used in writing, or in print, are understood by all persons of common education, yet, if the' original words were used instead of the initials, no person of mere common education would know what they meant. So it is with these words. In our primary schools, the children are taught that A. D. stand for and signify *in the year of our Lord*, and not that *A. D.* means *Anno Domini*, nor that *Anno Domini* means *in the year of our Lord.*

2. It does not appear, from the information, into what court, or at what time, the state's attorney filed the information on which the respondent was tried.

It is only by inference, and by reference to the *venue* in the margin, that any one could ascertain.

*H. P. Smith*, state's attorney, for prosecution.

I. The motion in arrest was correctly overruled.

1. Because the use of the words, "*Anno Domini*," in the caption of the information, designating the term of the court in which the same was filed, does not render the information defective.

The case, *State* v. *Hodgedon*, 3 Vt. R. p. 481, is an authority in support of the information in this particular. The court decided, in that case, that the indictment was not defective, the words, " *in the year of our Lord*," being written or expressed by A. D., the initial letters of *Anno Domini.*

To hold an indictment, with the abbreviations or initials of *Anno Domini*, good, and say if the whole words are written, instead of their initials, it is defective, would be, to say the least, a degree of *strictness* and *nice criticism* not required for the safety of the prisoner, but offering an opportunity for the escape of offenders, to the encouragement, rather than the prevention, of crimes.

LAMOILLE,
*April,*
1841.

State
v.
Gilbert,

LAMOILLE,
April,
1841.

State
v.
Gilbert.

The reasons assigned by the court, in support of the indictment, in the case above cited, may, with equal propriety, be given in support of this information. The words, *Anno Domini*, have become incorporated into our English language and become a part of it. Their signification is taught in our schools, and is as well understood as that of any word in the English language. They have been so long in use and universally received that the lexicographers of our language have incorporated them, with their signification, into the several dictionaries now in use among us, and that, too, without giving the derivation.

2. The statute is equally applicable to civil as criminal process, and these letters have ever been used in civil proceedings in this state.

3. Again, these words are only used in the caption, which is merely descriptive of the style and term of the court in which the information is filed ; but the information would be sufficiently certain, and can be supported without them. Consequently, the caption may be rejected as surplusage. 1 Chit. C. L. 143, 195—196.

II. As to the second cause assigned for arrest of judgment in this action : The information is according to the form which has been long used in this state, and corresponds precisely with the one given by Judge Aiken, in his last edition of Practical Forms. See Aik. Prac. Forms, 2d ed. 225.

III. As to the third cause assigned : See the case, *State v. Hodgeden*, before cited, 3 Vt. R. 481, which is decisive of the question raised upon this part of the information.

IV. The law requires that the goods stolen shall be described by the names usually appropriated to them, and that the *number* and value should be stated. Arch. Crim. Pl. 49. This information states that the respondent at Eden,&c., *one mare*, (of a bay or brown color,) of the value of one hundred dollars, &c.

By no reasonable and fair construction of language, can this expression be construed to mean two different beasts. The color can have reference to but *one* and the same beast, and is only descriptive of one and the same mare.

V. The words (" of a bay or brown color,") are superfluous and may be treated as surplusage. The description of the property is sufficiently certain without them.

The rule of law is, that, if the indictment or information can be supported without the words wich are bad, they may on arrest of judgment, be rejected as surplusage. 1 Chit. C. L. 143. Id. 195–6.

The opinion of the court was delivered by

REDFIELD, J.—The objection to the use of the words *Anno Domini*, in the caption of the indictment, cannot prevail. The abbreviations A. D., standing for these same words, were considered sufficient in an indictment, *State* v. *Hodgeden*, 3 Vt. R. 481, *a fortiori*, the words themselves should be. · These words have become literally English by adoption. The same is true of a very considerable number of terms in the language. Most of these adopted terms have changed their costume, while others have not. " *Phenomenon*" and " *memorandum*," are as strictly English, as any terms of the most purely Saxon derivation. Others are not the less so because they still retain their foreign dress, e. g. *pro tempore, sine die, nemine contradicente, bona fide, Anno Domini*, as well as, *ennui, sang froid, beaux, capapie, tete-a-tete*, and thousands of others, which are well understood by mere English readers.

It may be observed that this is merely superfluous and might well be rejected as surplusage, there being no other era in use, in this country, in our judicial, or other public proceedings.

The caption of a bill of indictment is no part of the presentment of the grand jury. It is merely the record of the court, and might be wholly omitted. The minute of the clerk of the time when the bill was found, and the record of the court would supply the defect. So, too, if the preface of the bill, which formerly contained the names of the jurors, is defective or false, it may be corrected by reference to the other records of the term.

This disposes of all the objections raised, except the description of the color of the horse. It was wholly unnecessary to describe the color of the animal. But, if such description was given, it must be considered a descriptive allegation, doubtless, and cannot be rejected as surplusage. But the colors named in this bill are the same,

and if the allegation, in regard to color, had been that the horse was of *some* color, that he was of one of the primary colors, it is not perceived how this could have been any good ground of arresting judgment. If the proof on trial did not correspond with the description, it would be ground for acquittal, but no ground of arresting judgment.

The exceptions having been overruled, sentenced was passed.