210 A.2d 61.

JAMES F. WILLIAMSON, *Registrar vs.* GENERAL FINANCE CORPORATION.

MAY 12, 1965.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Joslin, JJ.

JOSLIN, J. This action of debt on bond was brought by the registrar of motor vehicles at the relation of Robert C. MacVeety to recover on a surety bond executed by the defendant pursuant to P. L. 1952, chap. 3002, art. III, sec. 5. It is before us on the defendant's exception to a decision of a justice of the superior court sustaining the plaintiff's demurrer to the defendant's amended pleas for the reason that portions thereof were in Latin rather than English.

For the reason which defendant describes in its brief as "an attempt to exalt pleadings to their former glory," it

couched portions of its pleas to plaintiff's declaration in Latin. Its first plea is illustrative.

> "The defendant corporation pleads *non est factum* in manner and form as alleged in the plaintiff's declaration *et hoc paratus ad patriam.*" (italics ours)

It is objected that the plea is bad for the reason that the words *non est factum* and *et hoc paratus ad patriam* are not in English. *Non est factum* is defined in Black's Law Dictionary (4th ed.), page 1202, as a plea to an action of debt on bond or other specialty, and *et hoc paratus ad patriam,* although not defined by either Black or Bouvier (3d rev.), is apparently intended as the Latin equivalent of the traditional conclusion to the country in a plea of the general issue.

There are Latin words which by common usage have been incorporated into the English language and their use in pleadings is proper. Thus the words "Anno Domini" were held to have been adopted into the English language, *State* v. *Gilbert,* 13 Vt. 647; the word "alias" to have acquired a meaning in English equivalent to "otherwise known as," *Kennedy* v. *People,* 39 N. Y. 245; the Latin abbreviation "&c." to have acquired the meaning of "and so forth" and thereby to have been naturalized into English, *Berry* v. *Osborn,* 28 N. H. 279; and the words "vs." and "versus" to have acquired a well-understood meaning through long usage and thereby to be as appropriate as would the word "against," *Smith* v. *Butler,* 25 N. H. 521. The words "ultra vires" used by defendant may be thus classified. The Latin words used by defendant in its first plea, however, and notwithstanding that the phrase "non est factum" may be found in Webster's New International Dictionary (3d ed.), page 1536, have not been adopted into the vernacular.

The question, however, relates not to Latin words that may have been adopted into the English language, but concerns those which have not been so adopted. The plaintiff

says the use of such words is prohibited by 4 George II, chap. 26, which in pertinent part requires that pleadings should "be in the English tongue and language only, and not in Latin * * *." He further argues that 4 George II, chap. 26, is a part of the law of this state by virtue of G. L. 1956, §43-3-1, which provides that:

"In all cases in which provision is not made herein, such English statutes, introduced before the Declaration of Independence, which have continued to be practiced under as in force in this state, shall be deemed and taken as a part of the common law thereof, and remain in force until otherwise specially provided."

The only statutes of England, however, which were in force as the common law of the colony were those specifically enumerated in the Act of the general assembly adopted at its February session in 1750. In *Potter v. Thornton*, 7 R. I. 252, we held that no enlargement thereof resulted from the enactment of the second section of P. L. 1767, page 56, the precursor to §43-3-1, wherein it is provided:

"AND *be it further Enacted by the Authority aforesaid*, That in all Actions, Causes, Matters and Things, whatsoever, where there is no particular Law of this Colony, or Act of Parliament introduced, for the Decision and Determination of the same, then and in such Cases the laws of *England* shall be in Force for the Decision and Determination of the same."

The statutes adopted in 1750 which are enumerated in 5 Rhode Island Colonial Records, 1741-1756, at page 289, include many Acts of Parliament, but 4 George II, chap. 26, is not among them. Judicial History of Rhode Island by Chief Justice Edmund W. Flynn, 1 West's Rhode Island Digest, pp. XVI-XVIII. Reference to 4 George II, chap. 26, and §43-3-1 is therefore inapposite.

Although not prohibited by statute, the use of Latin terms in pleadings is impermissible unless they have become so anglicized as to have been adopted as part of the English language and are so clearly intelligible as not to require re-

sort to a law dictionary by one whose education did not include a study of the ancient language. Latin may have been the required language for pleading in England from the Norman conquest until the reign of Edward III and then again after a hiatus from the restoration of Charles II until the enactment of 4 George II, chap. 26. See 7 Encycl. Pl. and Pr., page 720. Its use, however, in the latter half of the twentieth century so clouds a pleading with indefiniteness and vagueness as not sufficiently to inform the adverse party of what he may be called upon to meet at trial and therefore to fall short of meeting the test that averments should be as precise and definite as the nature of the case will permit. *Lee* v. *Reliance Mills Co.,* 21 R. I. 322. In our judgment, the first plea contains Latin phrases which have not by usage become a part of the English vernacular and it is, therefore, bad. In the same category fall its other pleas where it used the Latin words *"onerari non,"* *"et hoc paratus verificare,"* and *"ad hoc paratus verificare."*

We are constrained to repeat what the New Hampshire court, as far back as 1854, said in a case involving a question similar to that now before us: "We do not feel that our time and labor are well bestowed either for the public good or the advancement of justice, in the examination of questions of this kind." *Berry* v. *Osborn, supra,* at page 283.

The defendant's exception to the decision sustaining the plaintiff's demurrer to its pleas is overruled, and the case is remitted to the superior court for further proceedings.

*Jordan, Hanson & Curran, A. Lauriston Parks,* for plaintiff.

*Pontarelli & Berberian, Aram K. Berberian,* for defendant.