289 A.2d 44.
WILMA JONES *et al. vs.* BEVERLY ACIZ *et al.*
HOUSING AUTHORITY OF THE CITY OF PROVIDENCE *vs.*
LILLIAN J. PHILLIPS.

MARCH 28, 1972

PRESENT: Roberts, C. J.. Paolino, Powers, Joslin and Kelleher, JJ.

PAOLINO, J.   This proceeding involves two petitions for certiorari which raise identical issues and have therefore been consolidated for hearing in this court.   However, because the facts which precipitated these petitions are somewhat different, we shall discuss the facts of each case separately but shall consider the issues raised as though there were but one case before us.

We first address ourselves to the case of Wilma Jones and Gerald Jones v. Beverly Aciz and Charles Aciz, which is docketed in this court as No. 1213 — M. P. For convenience we shall hereinafter sometimes refer to Wilma and Gerald Jones as plaintiffs and to Beverly and Charles Aciz as defendants or tenants. The case began in August 1970, when plaintiffs brought a complaint against defendants for possession of their premises on the ground that defendants had failed to pay their rent. The plaintiffs also asked for judgment for arrears of rent. The defendants filed an answer claiming violations of minimum standards for housing and alleging that plaintiffs were seeking to evict them because of their complaints to the local authorities about these alleged violations.

On September 3, 1970, after trial on the merits in the Sixth Division of the District Court, a justice of that court ordered a judgment for plaintiffs for possession and for $188 for arrears of rent for four months. He stayed execution of the judgment for 60 days conditional upon payment of the rent as it fell due during each month of the stay of execution. The defendants claimed an appeal within the statutory six-hour period and with the claim of appeal they filed an affidavit of indigency and made a motion to ask the District Court to waive the costs of appeal provided for in G. L. 1956 (1969 Reenactment) §9-12-10, as amended,[1] and the bond required by §9-12-12.[2] The justice of the District Court denied defendants' request.

---

[1]Section 9-12-10, as amended, reads as follows:

"Claim of appeal to superior court.—In all civil cases in the district court, any party may cause such case to be removed for trial on all questions of law and fact, to the superior court for the county in which division the suit is pending, by claiming an appeal from the judgment of the district court, in writing, filed with the clerk of said division within two (2) days exclusive of Sundays and legal holidays after the judgment is entered; provided that in all cases for the possession of tenements let, or held at will or by sufferance, such claim of appeal shall be filed within six (6) hours after judgment is entered, and provided

On September 23, 1970, plaintiffs filed an affidavit saying that defendants had not paid the rent due on September 6, 1970, and asked that execution issue. Execution issued and defendants vacated the premises soon thereafter.

On October 29, 1970, defendants filed a motion in this court for leave to file a petition for certiorari to review the District Court's refusal to waive the appeal costs and bond. On December 1, 1970, after considering the opposing memoranda of law, we granted defendants' motion and ordered the writ to issue.

Shortly thereafter plaintiffs' counsel filed a motion to withdraw as counsel, together with an affidavit by plaintiffs stating that they could not financially afford to continue to retain counsel in this matter and that the costs of going forward with counsel would be prohibitive. They also stated that they did not receive any rent from defendants, in violation of the condition imposed by the District Court, and that defendants had in fact vacated the premises prior to the filing of their petition for certiorari. We granted their counsel's motion to withdraw.

After plaintiffs' counsel withdrew from the case, the Attorney General of the State of Rhode Island filed a motion

---

that the party claiming such appeal at the time of claiming the same shall pay to the clerk all costs including an attorney's fee of fifty dollars ($50.00) for the party or parties adversely interested in the judgment, to be paid by the clerk to the attorney for such adverse party; and provided further, that costs shall not be taxed, exclusive of said attorney's fee, at a less sum than the sum of twenty dollars ($20.00)."

2Section 9-12-12 reads as follows:

"Appeal bond of defendant in action for possession of tenements let.— Every defendant in an action for the possession of tenements let, or held at will or by sufferance, claiming an appeal, shall, in addition to making the payments required by §9-12-10, give bond to the plaintiff, with one or more sureties satisfactory to the district court, to pay all rent or other moneys due, or which may become due pending the action under the tenancy, and such damages and costs as may be awarded against him, such bond to be filed with the clerk of the district court, or person acting as clerk, at the time of claiming an appeal."

in this court to intervene in this case in support of the constitutionality of §§9-12-10 and 9-12-12. On April 21, 1971, there being no objection, we granted the motion to intervene.

While this petition was pending here, another motion for leave to file a petition for a writ of certiorari was filed in the case of Housing Authority of the City of Providence v. Lillian J. Phillips, docketed as No. 1523 - M.P. in this court. The motion was filed by Lillian J. Phillips, whom we shall refer to as petitioner or tenant. The petition contains the following allegations. The petitioner is a month-to-month tenant in the Providence Housing Authority's Hartford Park Project. On July 12, 1971, she was served with a summons and complaint for possession of her apartment, returnable to the Sixth Division of the District Court. Prior to trial petitioner moved to dismiss on various grounds. These motions were denied. The case was then heard on the merits and resulted in a judgment in favor of the housing authority for possession.

Immediately following the trial justice's decision, petitioner's counsel moved for leave to claim an appeal to the Superior Court, without prepayment of the appeal costs and the attorney's fees required by §9-12-10, and for waiver of the appeal bond required by §9-12-12. Counsel made offers of proof that petitioner was a recipient of public assistance; that the amount she received covered only basic essentials; that the Department of Social and Rehabilitative Services did not pay costs or attorney's fees for recipients of assistance; and that petitioner was otherwise unable to pay these fees and costs, or to post an appeal bond. The trial justice refused these offers and denied the motion on the ground that the statutes required the prepayment of appeal costs and the posting of the bond without exception and that neither the state nor federal constitutions required or permitted him to make an exception

in the case of indigency. He therefore ruled that petitioner's offers were irrelevant.

The petitioner's counsel also attempted to file a notice of appeal with the chief clerk of the District Court, but the latter refused to accept the notice of appeal without prepayment of $70 in appeal fees and costs and a bond as required by the pertinent statutes.

On August 24, 1971, petitioner filed motions here for leave to file a petition for certiorari, and a stay of execution of the District Court judgment. She also filed supporting affidavits and memoranda. An order was entered that day granting the stay of execution, and we subsequently granted the motion for certiorari and continued the stay of execution previously granted. We also ordered that this petition be consolidated for hearing in this court with the case of Jones et al. v. Aciz et al., No. 1213 - M. P.

It is undisputed that as of the date of the hearing before us, petitioner and her six minor children occupy the apartment in the Hartford Park Project and that her sole means of support consists of payments from the Rhode Island Department of Social and Rehabilitative Services.

Wilma Jones and Gerald Jones have filed no brief in this proceeding. The housing authority has joined in the brief filed by the Attorney General, insofar as it pertains to its case, and Lillian J. Phillips is relying on the brief filed by defendants in the Jones case.

I

The Question of Mootness

In the petition seeking a review of this decision in Wilma Jones and Gerald Jones v. Beverly Aciz and Charles Aciz, the Attorney General raises the question of mootness. He argues that the case is moot because defendants in that case vacated the premises while the case was pending in this court. That this court will not ordinarily consider

moot questions of law is well settled. *Malinou* v. *La France*, 108 R. I. 42, 271 A.2d 808 (1970).

In this case the question of mootness has two facets, one relating to the money judgment of $188 for back rent and the other to the question of possession and the bond requirement. With respect to the money judgment the case is not moot. As the court said many years ago in *Adams* v. *Union R.R.*, 21 R. I. 134, 140-41, 42 A. 515, 517 (1899):

> "A moot case is one which seeks to determine an abstract question, which does not rest upon existing facts or rights. Where a concrete case of fact or right is shown, we know of no principle or policy of law which will deprive a party of a determination simply because his motive in the assertion of such right is to secure such determination."

The validity of the money judgment is not an abstract question; rather it involves a very real and concrete dispute between the parties which can be resolved and concluded in this proceeding. The mere fact that defendants vacated the premises in question has no bearing on the question whether or not the Joneses are entitled to the $188 judgment for back rent.

With respect to the question of possession and the bond requirement we believe that the case has become moot by reason of the fact that defendants vacated the premises while the case was pending in this court. A holding by this court that defendants may prosecute their appeal de novo in the Superior Court from the judgment of the District Court without paying appeal costs or furnishing a bond will amount to a nullity as far as possession of the premises is concerned, at least in the absence of something in the record indicating that defendants would want to resume possession of the premises. However, even though this question is moot in the Jones case, the identical issue is raised in the housing authority case, in which the tenant is still residing at the premises involved in that dispute.

620

What we decide in the latter case will apply to the Jones case as well.

This case presents to this court for the first time, as far as we have been able to ascertain, the question whether the District Court has the power to waive, in the case of indigent defendants, appeal costs and surety bonds in civil cases as provided in §9-12-10, as amended, and §9-12-12, respectively.

In support of their claim that the District Court has such power the tenants make several arguments, the first of which is that art. I, sec. 5[3] of our state constitution gives our courts the discretion to waive such appeal costs and bond requirements for indigent defendants. Next they argue that the common law of this state, as well as the English statutes adopted by G. L. 1956, §43-3-1,[4] gives our courts the power to waive appeal costs and bond requirements for indigent defendants. They conclude this portion of their argument by asserting that the District Court abused its discretion in failing to exercise its constitutional and common-law power to allow them to appeal in forma pauperis. Finally, they argue that §§9-12-10 and 9-12-12, as applied to them, violates their right to equal protection of the laws as guaranteed to them under art. XIV, sec. 1 of amendments to our Federal Constitution and their right

---

[3]Article I sec. 5 reads as follows:

"Remedies for wrongs—Right to justice.—Every person within this state ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which he may receive in his person, property, or character. He ought to obtain right and justice freely and without purchase completely and without denial; promptly and without delay; conformably to the laws."

Section 43-3-1 reads as follows:

"English statutes as common law.—In all cases in which provision is not made herein such English statutes, introduced before the Declaration of Independence. which have continued to be practiced under as in force in this state, shall be deemed and taken as a part of the common law of proof and remain in force until otherwise specially provided."

of access to the courts as provided in that portion of art. I of amendments to our Federal Constitution which states that "Congress shall make no law * * * abridging * * * the right of the people * * * to petition the government for a redress of grievances."

The provisions of §9-12-10, as well as the reasons for its enactment, are sufficiently different from those of §9-12-12 as to warrant separate treatment by us.

## II
### General Laws 1956 (1969 Reenactment) §9-12-10

Section 9-12-10, as amended, provides that in all cases for the possession of tenements the party claiming the appeal at the time of claiming the same shall pay to the clerk all costs including an attorney's fee of $50 for the party or parties interested in the judgment. Section 9-12-10 further provides that such counsel fee is to be paid by the clerk to the attorney for the adverse party and that costs shall not be taxed, exclusive of said attorney's fee, at a less sum than the sum of $20. Thus the minimum cost of appeal in an action for possession of tenements is $70.

On the view we take we do not reach the constitutional questions raised by the tenants.[5] The issue here is whether the District Court has the power to waive the costs of appeal payable by an indigent defendant in an action for possession of tenements. There is no statute in this state which expressly authorizes such a waiver.[6] In our judgment none

---

[5]See Lindsey v. Normet, 405 U. S. 56, 92 S.Ct. 802. 31 L.Ed.2d 36. (1972), for a discussion of the question whether Oregon's judicial procedure for eviction of tenants after nonpayment of rent violates either the Equal Protection Clause or the Due Process Clause of the fourteenth amendment.

[6]Several states and the federal government have enacted statutory provisions relieving indigents from various fees and costs at the trial or appellate level of civil litigation. See 4 Am. Jur. 2d, Appeal and Error §§345-351; 20 Am. Jur. 2d, Costs §§47-51. See also note: Proceedings in Forma Pauperis, 9 U. Fla. L. Rev. 65 (1956).

is necessary. The District Court has inherent power, at common law, to waive the costs of appeal by an indigent defendant in an action for possession of tenements.[7] Such power is a necessary adjunct to the exercise of judicial power. It would be unthinkable that under our system the contrary could be true. As the court said many years ago in *Martin* v. *Superior Court*, 176 Cal. 289, 293-94, 168 P. 135, 137 (1917):

> "* * * the power of the English common-law courts to remit fees on petition *in forma pauperis* did not have its origin in any statute, but was in fact exercised as one of the inherent powers of the courts themselves, quite independently of statute. And this one would naturally expect to find since, imperfect as was the ancient common-law system, harsh as it was in many of its methods and measures, it would strike one with surprise to be credibly informed that the common-law courts of England shut their doors upon all poor suitors who could not pay fees, until parliament came to their relief."

*Martin* v. *Superior Court, supra,* held that the California trial courts had the inherent power, derived from common-law usage, to permit an indigent civil litigant to sue in forma pauperis. Even though that case involved the right of an indigent plaintiff to sue in forma pauperis, while the case at bar involves the right of an indigent defendant to appeal, we are persuaded that the reasoning of the court in the California case is equally applicable here.

Moreover, the history of the common law in our state supports the existence of such inherent power in the District Court. Statutory waiver of costs for the poor civil litigant was authorized in 11 Hen. VII, chap. 12 at 60-61

---

[7]There is a difference of opinion among the courts of other jurisdictions regarding the existence of an inherent power of the courts to waive fees and costs for indigent litigants. *Compare Sloatman* v. *Gibbons,* 104 Ariz. 429, 454 P.2d 574 (1969), with *O'Connor* v. *Matzdoff,* 76 Wash.2d 589, 458 P.2d 154 (1969), and *Casper* v. *Huber,* 85 Nev. 474, 456 P.2d 436 (1969).

(1494). By later statute, "Elizabeth I, * * * expressly authorized 'waiver' of fees [in 1603]." *Jeffreys* v. *Jeffreys*, 296 N.Y.S.2d 74, 78, 58 Misc.2d 1045, 1046 (1968). *See also* Annot., 6 A.L.R. 1281 (1920); Maguire, *Poverty and Civil Litigation*, 36 Harv. L. Rev. 361, 363-72 (1923).

In *Williamson* v. *General Finance Corp.*, 99 R. I. 626, 628, 210 A.2d 61, 63 (1965), we pointed out that

> "The only statutes of England * * * which were in force as the common law of the colony were those specifically enumerated in the Act of the general assembly adopted at its February session in 1750."

"The statutes of * * * Elizabeth" were to be in force as the common law of the colony as well as " '[a]ll statutes relating to the poor * * *.' " Flynn, *Judicial History of Rhode Island*, 1 West's Rhode Island Digest, pp. XVII-XVIII. There is nothing in the judicial history of this state to warrant the conclusion that those statutes have not been "practiced under." Indeed the lack of cases involving this question would indicate strongly that those statutes "have continued to be practiced under as in force in this state." Section 43-3-1. It would be inconceivable that the courts of this state would have done otherwise. We agree with the tenants that *Spalding* v. *Bainbridge*, 12 R. I. 244, decided in 1879, indicates that these statutes "have continued to be practiced under as in force in this state," and we feel this way even though the *Spalding* case is factually different from the case at bar.

In *Spalding* the defendant moved that the plaintiff be required to give surety for costs under Gen. Stat. R. I. ch. 195, §26 (1872). It was conceded in that case that the plaintiff was too poor to procure a surety. The defendant insisted that under the statute he was entitled to an order in accordance with his motion. In a very short per curiam the court said:

624

"We do not think that the statute, though peremptory in its terms, requires us to make the order in a case like the present. Such an order would be of no benefit to the defendant unless we should dismiss the suit for non-compliance with it.[8] This the statute, Gen. Stat. R. I. cap. 195, § 27, does not compel us to do, but plainly leaves in our discretion. We certainly should not dismiss the suit, if it clearly appeared that the non-compliance was because of the plaintiff's inability on account of poverty. To dismiss the suit in such a case would practically amount to a denial of justice and would be inconsistent with the Constitution. Constitution of R. I. Art. 1, § 5."

The subject matter of these English statutes has not been "otherwise specially provided" for and therefore remains in effect. There is nothing in the language of §9-12-10 which discloses a legislative intent to deprive the District Court of its inherent power to waive appeal costs in the case of indigent defendants. Section 9-12-10 does not pertain to indigents at all; it merely provides for appeals from the District Court to the Superior Court and prescribes the payment of certain costs of appeal, including a counsel fee of $50 for the adverse party's attorney. Attorney's fees are part of the costs of litigation and may be taxed as costs.

---

[8]General Statutes of Rhode Island, ch. 195, in pertinent part reads:

"Sec. 25. Whenever the plaintiff in any original writ, in any court, shall not be an inhabitant of this state, he shall, upon motion of any defendant therein, at the first term of the court to which the writ is returnable, give some sufficient person residing within the state as surety for costs, which shall be done by such surety, endorsing his name on such writ.

"Sec. 26. The court before whom any action at law, or suit in equity is pending, shall at any time before final judgment therein, upon motion of any defendant, and for cause shown, require the plaintiff to procure another surety for costs residing within the state, or, if none have been given, a sufficient surety residing within the state, which shall be done in like manner as is provided in the next preceding section.

"Sec. 27. Upon the neglect of the plaintiff to comply with an order of the court requiring a surety, or another surety as herein provided, his action or suit may be dismissed with costs for the defendant."

*Sprague* v. *Ticonic National Bank,* 307 U. S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939). Section 9-12-10 is a general statute but one which contains no language which would justify a construction that the Legislature thereby intended to deny the District Court of its inherent power to waive the costs of appeal in a proper case of indigency. It would be error for this court to interpret the statute otherwise. As the court said in *Langlois* v. *Dunn Worsted Mills,* 25 R. I. 645, 649-50, 57 A. 910, 912 (1904): " * * * a court will not presume that a statute is intended to change a rule of common law unless such an intent appears."

We recognize the importance of the state interest which precipitates this kind of legislation, namely, the desire to free higher courts from unnecessary or frivolous appeals, and the raising of revenue to pay part of the expenses of administering our judicial system. However, these state interests, important as they are, are not sufficient to warrant a finding that the Legislature thereby intended to deprive the District Court of its inherent power to waive such costs in the case of deserving indigent civil defendants in this kind of an action. Moreover, as the court pointed out in *Ferguson* v. *Keays,* 4 Cal.3d 649, 484 P.2d 70 (1971), our courts are not without power to act. The inherent power we have been speaking about is a discretionary power. Thus the District Court has the power to prevent abuses from occurring by imposing reasonable conditions upon the exercise of its inherent discretionary power to prevent a higher court from being flooded with sham or frivolous appeals. As the court said in another California case, *Majors* v. *Superior Court,* 181 Cal. 270, 280, 184 P. 18, 22 (1919), judicial discretion in this area

" * * * should be exercised with a view to confine the privilege most strictly to those who, having a substantial right to enforce or preserve, are absolutely unable otherwise to so do, and who, once having been admitted to proceed *in forma pauperis,* diligently pursue a course

free from unreasonable delay or vexatious conduct of any kind."

We hold that the District Court has the inherent power to waive the costs of appeal provided for in §9-12-10 in an action for possession of tenements, upon a satisfactory showing of indigence and a certificate of counsel attesting to the merits of the proposed appeal and declaring that, in his opinion, his client's contentions have merit and that the appeal is sought in good faith and not for the purposes of delay or harassment. Our decision in this case applies with equal force to costs of appeal in any civil action in the District Court.

### III

### General Laws 1956 (1969 Reenactment) §9-12-12

We come now to a consideration of the tenants' contentions insofar as they pertain to the provisions of §9-12-12 which, as we have already pointed out, differs substantially from §9-12-10. Section 9-12-12, in addition to the payments required by §9-12-10 provides that in an action for the possession of tenements a defendant claiming an appeal shall give bond to the plaintiff, with surety or securities satisfactory to the District Court, to pay rent or other moneys due, or which may become due pending the action under the tenancy, and such damages and costs as may be awarded against him. What we said in considering §9-12-10 applies with equal force to those portions of §9-12-12 which pertain to the payment of costs of appeal. Our discussion here centers on that portion of §9-12-12 pertaining to the giving of a bond to secure payment of the rent due, or which may become due pending the appeal.

The bond requirement prescribed in §9-12-12, unlike the counsel fee provision in §9-12-10, is not a cost of appeal. This provision is solely for the protection of the landlord. It is reasonable to assume that in considering the competing interests involved, namely, the landlord's right to

rent and the tenant's right under the statute to appeal from an adverse judgment, the Legislature deliberately inserted the bond provision with the intention of equalizing the equities by specifically and unequivocally granting this protection to the landlord. There are no legislative gaps to fill here. To hold that the court has the inherent power to waive this provision in the case of indigent defendants would clearly fly in the face of the express language of the statute and would clearly constitute unreasonable judicial legislation.

Nor do we believe there is any merit to the tenants' contention that art. I, sec. 5 of our state constitution gives the court the power to waive the bond requirements of §9-12-12. *Spalding* v. *Bainbridge, supra,* is of no help to tenants here. That case involves a requirement for the furnishing of surety for costs by a plaintiff in an original action. The case at bar involves an appeal from one court to a higher court.

The question remains, however, whether, in the case of an indigent defendant, the bond requirement of §9-12-12 violates any of the tenants' constitutional rights. We first consider their claim that this provision, as applied to them, violates art. XIV, sec. 1 of amendments to our Federal Constitution because it denies them equal protection of the laws. They point out that the only reason for their failure to perfect their appeal was their financial inability to comply with the bond requirement and, therefore, they argue that solely because of their poverty they were denied their vital right to a de novo hearing in the Superior Court provided for all unsuccessful District Court litigants who are financially able to give such a bond. They further contend that these statutes affect fundamental interests and therefore cannot withstand constitutional challenge by mere reference to rational statutory objectives unless the state can establish a compelling state interest that will be served

by the statute which outweighs the fundamental interests involved. They assert that no state interest served by §9-12-12 is sufficiently compelling to satisfy the rigid requirements of the equal-protection clause. Therefore, they argue that although there is no constitutional right to appeal a case from a lower to a higher court, *Griffin* v. *Illinois*, 351 U. S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); *McKane* v. *Durston*, 153 U. S. 684, 14 S.Ct. 913, 38 L.Ed. 867 (1894), a state may not enact a law which has the effect of providing an appeal to some litigants and denying it to others because of the inability of those so denied to pay the costs of further prosecuting their case.

To support their position the tenants have cited a number of cases to which we shall make a brief reference.[9] *Douglas* v. *California*, 372 U. S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); *Burns* v. *Ohio*, 360 U. S. 252, 79 S.Ct. 1164, 3 L.Ed.2d 1209 (1959); *Griffin* v. *Illinois, supra.* They are criminal cases and therefore are not controlling here. Those cases clearly involved questions about the administration of justice in criminal matters. This was pointed out in the dissenting opinion of Mr. Justice Black in *Boddie* v. *Con-*

---

[9] In *Douglas* v. *California*, 372 U. S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), the issue was whether or not an indigent in a criminal case shall be denied the assistance of counsel on appeal. The court said "* * * where the merits of *the one and only appeal* an indigent has as of right are decided without benefit of counsel, we think an unconstitutional line has been drawn between rich and poor." *Id.* at 357, 83 S.Ct. at 816, 9 L.Ed.2d at 814.

*Burns* v. *Ohio,* questioned whether a state may constitutionally require that an indigent defendant in a criminal case pay a filing fee before permitting him to file a motion for leave to appeal in one of its courts. Mr. Chief Justice Warren wrote that there could not be imposition by the state of financial barriers restricting the availability of appellate review for indigent criminal defendants.

In *Griffin* v. *Illinois,* petitioners alleged that they were poor persons and asked that a transcript which was necessary to gain full appellate review be furnished to them without cost. Denial of the request was a violation of the petitioners' rights of due process and equal protection.

*necticut,* 401 U. S. 371, 390, 91 S.Ct. 780, 792, 28 L.Ed.2d 113, 126 (1971), where he said:

> "But in *Griffin* the Court studiously and carefully refrained from saying one word or one sentence suggesting that the rule there announced to control rights of criminal defendants would control in the quite different field of civil cases. And there are strong reasons for distinguishing between the two types of cases."

*Smith* v. *Bennett,* 365 U. S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39 (1961), cited by the tenants, involved a habeas corpus proceeding by an indigent prisoner, and is therefore clearly distinguishable from the case at bar. The indigent prisoner had been unable to petition the District Court of Lee County for a writ of habeas corpus because the clerk refused to docket the petition without payment of the $4 filing fee. In *Smith,* the court said that " * * * to interpose any financial consideration between an indigent prisoner of the State and his exercise of a state right to sue for his liberty is to deny that prisoner the equal protection of the laws." *Id.* at 709, 81 S.Ct. at 896, 6 L.Ed.2d at 40. *Chambers* v. *District Court,* 261 Iowa 31, 152 N.W.2d 818 (1967), is also distinguishable from the case at bar. The issue in *Chambers* was whether or not an indigent parent was entitled, at public expense, to the assistance of counsel and to a transcript of the evidence to prosecute an appeal from a juvenile court decree when such an appeal was specifically authorized by statute. That court said that when a plaintiff was given the statutory right to appeal, it must have been contemplated that the services of counsel and a transcript would be required to pursue the appeal.

The petitioners also rely on the following cases: *Lee* v. *Habib,* 424 F.2d 891 (D.C. Cir. 1970); *Boddie* v. *Connecticut, supra;* and *Harrington* v. *Harrington,* Me., 269 A.2d 310 (1970).

*Lee* v. *Habib, supra,* does have language which supports the constitutional right of indigent civil litigants to free

transcripts on appeal, but it appears that the constitutional question was not necessary to its decision. The decision was based on a statutory provision which could be construed as allowing a free transcript under certain circumstances " ' * * * if the trial judge * * * certifies that the appeal is not frivolous (but presents a substantial question).' " 424 F.2d at 903 (D.C. Cir. 1970).

*Boddie* v. *Connecticut, supra,* involved a divorce case. The court held that a filing fee which has the effect of barring the access of an indigent to the divorce court which is the sole means for terminating a marriage is, in effect, a denial of an opportunity to be heard and thus a denial of due process. But *Boddie* is clearly distinguishable from the case at bar. First, it involves a filing fee for original access to the courts for obtaining a divorce and, second, it is a divorce case and therefore involves the state as well as the parties themselves. Finally, it is clear that *Boddie* is limited strictly to its own facts. This is shown by the concluding paragraph of Mr. Justice Harlan when he closed the majority opinion in the following language:

> "In concluding that the Due Process Clause of the Fourteenth Amendment requires that these appellants be afforded an opportunity to go into court to obtain a divorce, we wish to re-emphasize that we go no further than necessary to dispose of the case before us, a case where the *bona fides* of both appellants' indigency and desire for divorce are here beyond dispute. We do not decide that access for all individuals to the courts is a right that is, in all circumstances, guaranteed by the Due Process Clause of the Fourteenth Amendment so that its exercise may not be placed beyond the reach of any individual, for, as we have already noted, in the case before us this right is the exclusive precondition to the adjustment of a fundamental human relationship. The requirement that these appellants resort to the judicial process is entirely a state-created matter. Thus we hold only that a State may not, consistent with the obligations imposed on

it by the Due Process Clause of the Fourteenth Amendment, pre-empt the right to dissolve this legal relationship without affording all citizens access to the means it has prescribed for doing so." *Id.* at 382-83, 91 S.Ct. at 788-89, 28 L.Ed.2d at 122.

*Harrington* v. *Harrington, supra,* was an action of forcible entry and detainer to obtain possession of a house. The defendant pleaded equitable title in herself. The District Court ordered judgment for plaintiffs and defendant appealed. The Superior Court dismissed the defendant's appeal for failure to comply with statutory security provisions and the defendant appealed to the Supreme Judicial Court. The court held that a statute compelling defendant in District Court to recognize or give bonds as prerequisite to hearing of her defense of title in herself, when because of her poverty she was unable to do so, was a denial of equal protection of law. The court also held that statute requiring security to maintain appeal from the judgment of the District Court imposed an unconstitutional burden because of defendant's status as a poor person.

The *Harrington* case involved noncompliance with the bond and security provisions of the Maine statute. Although that case differs somewhat from the one before us, we agree that the reasoning of the Maine court supports the tenants' position. While we acknowledge the force of the court's reasoning in *Harrington,* we are not convinced that we should apply it here.

We agree that once appellate review is established, it must be kept free of unreasonable discriminatory distinctions that can only impede open and equal access to the courts. We also agree that the constitutional mandate against invidious discrimination between indigent and rich litigants does not differentiate between civil and criminal cases. However, we have not been persuaded that the bond requirement of §9-12-12 is unreasonable or that it constitutes invidious discrimination between those who can and

those who cannot financially afford to comply with them. An action for possession of tenements involves at least two conflicting interests, both of which are of concern to the state. On one hand is the right of the landlord to possession of his property if his tenant fails to pay his rent or otherwise fails to comply with the material terms of his rental agreement; on the other is the tenant's right to enjoy his tenancy so long as he is not in default in violation of law. While we are mindful of the plight of the indigent we are also cognizant of the fact that the duty to care for the poor and the needy is on the state and not on the landlord. It would be just as unfair to say that a landlord must suffer the occupancy of his premises by an indigent non-paying tenant as it is to say that it is not the duty of the state to provide for such an indigent person. It must be kept in mind that we are not dealing with a situation in which a litigant, because of his indigency, is deprived of his day in court; here the tenants have had their day in court and have had a hearing on the merits of their case. What they seek now is an appeal to a higher court. We cannot say that in these circumstances the legislative requirement of a §9-12-12 bond in exchange for its grant to the tenant of a right to appeal from an adverse judgment constitutes invidious discrimination even in the case of an indigent defendant. We therefore hold that the bond requirement provision of §9-12-12 does not violate the tenants' right to equal protection of the law.

Acquiescence with the tenants' views involves a policy decision which belongs to the Legislature. It may change the present situation by enacting in forma pauperis relief legislation in eviction proceedings, or the Legislature may empower the court to waive compliance with the provisions of §9-12-12 in a proper case and for justifiable cause and protect the rights of the landlord by some other method. Since the problem is one of legislative policy, relief should be sought in the General Assembly in the first instance.

The tenants' final argument is that §9-12-12, as applied to indigent civil litigants, bars access to the courts in violation of the first and fourteenth amendments to the Federal Constitution. Specifically, they argue that by denying them access to the Superior Court for a de novo hearing the bond requirement of §9-12-12 violates that portion of art. I of amendments, which provides: "Congress shall make no law * * * abridging * * * the right of the people * * * to petition the government for a redress of grievances," and which has been made applicable to the states by the due process clause of the fourteenth amendment. This argument is without merit and requires no discussion other than to point out that the section in question does not deprive them access to the court; that section, as we have already said, merely provides for the posting of a bond pending the outcome of an appeal by litigants who, after having had a day in court and a hearing on the merits, desire to appeal to a higher court for a hearing de novo. This is especially so in view of the fact that there is no Federal Constitutional requirement under due process that a state provide any higher court or any right at all to review by a higher court.

*Brotherhood of R.R. Trainmen* v. *Virginia,* 377 U.S. 1, 84 S.Ct. 1113, 12 L.Ed.2d 89 (1964); *NAACP* v. *Button,* 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); and *Griffin* v *Illinois, supra,* all cited by the petitioners, are so clearly distinguishable on their facts from the case at bar as to require no further discussion.

In each case the petition for certiorari is granted in part and denied in part and the papers are ordered returned to the Sixth Division of the District Court for further proceedings in accordance with this opinion.

Motion for leave to reargue denied.

*Richard J. Israel,* Attorney General, Intervenor, *Alexander G. Teitz,* Special Assistant Attorney General.

*James L. O'Neill,* Rhode Island Legal Services, Inc., in behalf of Beverly Aciz et al., defendants-petitioners; *Gary Yesser, John M. Roney,* Rhode Island Legal Services, Inc., in behalf of Lillian J. Phillips, defendant-petitioner.