# PROVIDENCE COUNTY.

### WARREN R. PERCE vs. WILLIAM B. W. HALLETT.

A statute which prescribes entry fees and continuance fees for suits at law and in equity does not violate the provision in the Constitution of Rhode Island which declares that every person within this State "ought to obtain right and justice freely and without purchase; completely and without denial; promptly and without delay."

This constitutional provision prohibits gratuities or exactions given or demanded to influence legal proceedings, not moderate fees such as are prescribed by the statutory fee table. The interpretation of this provision is to be drawn from its history.

EXCEPTIONS to the Court of Common Pleas.

*October* 11, 1881. DURFEE, C. J. This case comes up from the Court of Common Pleas on exceptions to an order of that court dismissing the action, on motion of the clerk at the defendant's request, for nonpayment of the entry fee prescribed by statute.[1] The plaintiff contends that the statute is void for repugnance to the Constitution of the State, art. 1, § 5, which declares that every person within the State " ought to obtain right and justice freely and without purchase ; completely and without denial; promptly and without delay ; conformably to the law." He contends that to exact the fee is to sell justice. The argument is cogent, and if we were at liberty to regard simply the language of the provision, might be convincing. The provision has a history which sheds light on its meaning. It was borrowed from Magna Charta, and in England the generality of jurists and legislators have supposed and acted on the supposition that it does not prohibit such fees. Reeves' History of the English Law, Finlason's ed. vol. 1, pp. 284–287, and notes. The better opinion is that it was designed to abolish, not fixed fees, prescribed for the purposes of revenue, but the fines which were anciently paid to expedite or delay law proceedings and procure favor. See Thompson's Essay on Magna Charta, p. 230. The character of those fines is copiously exemplified by Madox in the twelfth chapter of his History of the Exchequer.[2] They appear to have been arbitrary exactions, often outrageously oppressive. Madox concludes his twelfth chapter with the following language : " Some

---

[1] Gen. Stat. R. I. cap. 246, § 12, as follows: " The fees on each writ, action, appeal, petition, and suit in equity, in any court, for the first term, shall be paid before entering the same; and for each term thereafter, on or before the second day thereof; otherwise the proceeding may be dismissed on motion of the clerk, at the discretion of the court."

This provision depending upon Pub. Laws R. I. cap. 850, of April 1, 1881.

[2] Compare the narrative of Richard de Anesty, given at length by Palgrave, English Commonwealth, vol. 2, pp. 5, 24, 75, 83. " *Haec sunt dona quae dedi.* . . . . *Radulfo medico regis, dedi triginta sex marcas et dimidiam ; Regi centum marcas et Reginae unam marcam auri.*"

men used to pay fines to have or obtain justice or right; others, to have their right or their proceedings or judgment speeded; others, for stopping or delaying of proceedings at law; and others were obliged to pay great and excessive fines (viz., a fourth part, a third part, or half of the debt sued for) to obtain justice and right, according to their several cases, so that the king seemed to sell justice and right to some and to delay or deny it to others. Against these mischiefs a remedy was provided by a clause in the great charters of liberties, made by King John and King Henry III. That clause in each of those charters runs in the same or consonant words, which are these : *Nulli vendemus, nulli negabimus, aut differemus rectum aut justiciam."* Mag. Char. Joh. 40; Char. Hen. III. 33.

In this country the provision has been widely copied into the declarations of right, which are contained in the state Constitutions, and we are not aware that it has anywhere been held to prohibit such fees. In this State such fees have existed ever since the Code of 1647. The Digests of 1798 and 1822 contain not only tables prescribing such fees, but also statutory declarations of right, in which the language of art. 1, § 5, will be found, word for word, as it is in the Constitution. The fee table was likewise reënacted immediately after the adoption of the Constitution in the Digest of 1844. It is evident, from these facts, that the fees were not then supposed to be obnoxious to any constitutional objection. They are moderate in amount, and entirely insufficient to reimburse the State for the cost of the administration of justice. In the light of both history and legislative practice, therefore, we think the legitimate conclusion is, that the declaration of the Constitution was intended to prohibit, not fees, like those prescribed in the fee table, but gratuitees, or exactions, given or demanded for the direct purpose of influencing the course of legal proceedings.

The exception is, therefore, overruled, and the judgment of the court below affirmed, with costs.           *Exceptions overruled.*

*Warren R. Perce, pro se ipso.*
*William B. W. Hallett, pro se ipso.*