TIMOTHY E. MOLLOY *vs.* JOHN F. COLLINS.

THOMAS A. CAHIR *vs.* SAME.

WALTER J. BATCHELDER *vs.* SAME.

MARCH 11, 1941.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Moss, J. These are petitions for writs of *certiorari* to review the action of the respondent as mayor of the city of Providence in confirming, after a hearing on evidence, his previous action in removing from office the three petitioners as the members of the board of canvassers and registration of that city. The writs were issued accordingly and the records relating to the hearing, together with the exhibits filed and a transcript of the testimony introduced, are now before us, and also an answer by the respondent to each of the petitions.

On December 28, 1939, the petitioners constituted the board of canvassers and registration for the city of Providence, which board will hereinafter be referred to as "the board", and had been such for a number of years, including the years of 1936 and 1938, when city and state elections were held in this state. The respondent was elected mayor of Providence at the election in November 1938. Thereafter, in his public address on the occasion of his inauguration as mayor, at the beginning of the year 1939, and in public addresses made a little later in that year, he charged the petitioners with derelictions and neglects in the matter of the performance of their duties as members of the board.

During the early part of the January 1939 session of the general assembly he publicly advocated the passage by it of an act giving the mayor of Providence much greater control over its affairs and new powers of removal of officials

of that city. In the spring of 1939 the general assembly passed an act, public laws of 1939, chapter 672, which, among other changes, provided for a considerable measure of increased administrative control by the mayor of Providence over the affairs and officials of that city. This act took effect upon its approval by the governor of the state on May 12, 1939 and the first part of sec. 16 thereof is as follows:

> "During the year 1939 the mayor shall have the power to remove any member of the board of canvassers and registration for malfeasance, misfeasance or nonfeasance occurring during the years 1938 or 1939 and in his order of removal the mayor shall state the cause of removal. Upon the filing of said order in the office of the city clerk the term of office of said member shall forthwith terminate and the mayor shall then have power to fill the vacancy thereby created for the unexpired term."

The next two sentences of the section, covering the remedies available to removed members of the board, are as follows:

> "The member of said board so removed may, within ten days of his removal, call upon the mayor to give him a public hearing on the cause of removal stated in said order and the mayor shall give said member such a hearing within thirty days. If, after said hearing, the mayor does not restore said member to his said office, said member may petition the supreme court to review said refusal on a writ of *certiorari* but the judgment of said court shall in no event go further than ousting the successor of said member and ordering said member restored to his said office at some date subsequent to said judgment. The entry of said judgment shall have no effect upon any act performed by the person appointed by the mayor to hold the office from which said member was removed."

On December 28, 1939, three days before the expiration of the time limited for such removal, the respondent, in accordance with this act, removed the petitioners from their

respective offices and set forth in his orders of removal nineteen specifications of malfeasance, misfeasance or nonfeasance by them, alleged by him to have occurred during the years 1938 and 1939. Thereafter, on January 3, 1940, each of the petitioners, in accordance with the above act, called upon the respondent to give him a public hearing on the causes of his removal from office. This request was granted by the respondent; and public hearings began accordingly on January 19, 1940.

The charges against all of the petitioners were heard together before the respondent, and the hearings continued intermittently until April 12, 1940. At all the hearings the respondent presided as the magistrate before whom they were held; and the presentation of evidence against the petitioners and the cross-examination of witnesses in their favor were conducted by an assistant city solicitor. The petitioners were represented by counsel of their own selection; and full opportunity was afforded them for introduction of evidence and for examination and cross-examination of witnesses.

A great deal of testimony and much documentary evidence were introduced. But before any of this testimony and other evidence was introduced the petitioners presented to the respondent a written motion in which they stated, in substance, that, without waiving any right or claim which they might have to question the validity of the statute under which they had been removed, or of the proceedings then pending, they denied his jurisdiction and power as mayor to act in the premises and to enter the order of removal; and they moved that the orders of removal be quashed and vacated, and that they be reinstated in their respective offices as members of the board. These motions were denied.

The first four reasons which were stated in the motion, as the grounds for the granting thereof, were that the statutory section under which the petitioners had been removed

was void, because it was in violation of certain stated provisions of the constitutions of the United States and of this state. The fifth reason thus stated was as follows:

> "5. At divers times and places since said John F. Collins took the oath of office as the Mayor of Providence, he has definitely expressed himself as being inimicable to the parties in the performance of their duties as members of the Board of Canvassers and Registration of Providence, and made charges and statements which indicate that he is interested, biased, and prejudiced against the parties, and that he has already formed an opinion as to the guilt of the parties and the charges made against them, that because thereof, it is impossible for him to give the parties the fair and impartial trial and hearing to which they are entitled under the law."

Documentary evidence was introduced in support of this fifth reason. Two other reasons stated in the motion are not now insisted upon.

On July 19, 1940, the respondent announced his decision against each of the petitioners, finding him guilty of each of the charges made against him and affirming the order for his removal. The respondent also stated that the hearing had been impartial on his part; that he had kept his mind "entirely open and receptive during the hearing" and had reached his decision "disinterestedly and without bias or prejudice, and solely on the evidence." The decisions are now before us for review on the writs of *certiorari* obtained by the petitioners in accordance with the above statute.

The first point insisted upon by counsel for the petitioners is that the statute in question is void, because it is in violation of article XI of the constitution of this state, which provides that the governor and all other executive and judicial officers shall be liable to impeachment. The reasoning of counsel is that an executive officer of the state, because of this provision, can only be removed from his office by im-

peachment proceedings and that the petitioners are such officers and come within the protection of this rule.

In our judgment a fatal defect in this reasoning is that the members of the board are not executive officers of the state within the meaning of the above provision in our state constitution. In support of their assertion to the contrary the petitioners' counsel rely largely on certain language in the opinion of this court in *Gainer* v. *Dunn,* 29 R. I. 232, at 234, wherein it is stated, with reference to the members of that board, that while their jurisdiction and duties are territorially limited to the city of Providence, their duties are of general concern; and that thus they constitute a board of state officers exercising a state function rather than a board of municipal officers exercising a municipal function.

But the language in that opinion which is relied on by the petitioners' counsel in the instant case is of no avail to them, because in a later case, *Chace* v. *City Council of Providence,* 36 R. I. 331 at 347, this court said: "The petitioner apparently relies upon several cases in this state as authority for his position that he is a 'State or public officer,' but these cases do not support his position that such an officer may not be removed from office by action of the municipal authorities. The case of *Gainer* v. *Dunn, supra,* holding that the board of canvassers of the city of Providence is a 'board of State officers exercising a State function rather than a board of municipal officers exercising a municipal function,' was considering the powers and jurisdiction of the board under a very elaborate special act creating the board and defining its powers and duties and its relation to elections; and had no relation to the question of the removal of any member of the board from office."

We are of the opinion that there is no merit in the contention of the petitioners that they are state executive officers and as such are protected, by the above-quoted provision of the state constitution, from removal from office otherwise

than by impeachment; and apparently their counsel do not strongly rely on that contention.

Their counsel contend that the statute under which the petitioners were removed from their offices is contrary to section 1 of the fourteenth amendment to the constitution of the United States, which provides that no state shall deprive any person of life, liberty or property without due process of law. But it is clear that this statute does not affect the life or liberty of any of the petitioners; and it is well settled that the removal of a salaried official from his office is not depriving him of property, since he has no property or contractual right to such salary. 2 McQuillin, Municipal Corporations, (2nd. ed. rev.) § § 514, 798. Therefore the statutory provision in question in this case does not come within the scope of this section of the fourteenth amendment.

It is also clear to us that there is no merit in the contention, which seems to be made in behalf of the petitioners, that the first sentence of sec. 5 of article I of the constitution of this state, namely, "Every person within this state ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which he may receive in his person, property, or character," applies to the statute now in question. As to each of the petitioners, his removal from his office did not constitute any injury to his person or property; and none of the charges upon which he was removed constituted an attack upon his character.

The principal contention in behalf of the petitioners is that this statute provides for a *judicial* hearing on the charges upon which they were removed from their offices; that therefore the hearing must be before a person who was without interest, bias or prejudice against them; and that the respondent was disqualified because of such interest, bias and prejudice. No evidence was offered to show that he had any pecuniary interest in the result of the hearing;

and therefore, if this contention can be sustained at all, it must be on the basis of bias and prejudice.

As to the hearing being "judicial", it was not strictly judicial in character, under the terms of the statute, which expressly provided that the mayor could remove any member of the board upon charges and appoint his successor, who would at once take office; and that the hearing, if any was requested by the removed official, should be held before the mayor himself. It would be at most quasi-judicial, as are the similar hearings which take place before many administrative bodies and which, according to an almost unbroken line of authorities, have been held valid.

Without discussing at this point the matter of bias and prejudice on the part of the respondent, we are of the opinion that the *manner* in which the hearing was held was proper and furnishes no ground for quashing the record. It was conducted like a strictly judicial hearing. Even the evidence which, during the hearing, was offered in behalf of the petitioners to show bias and prejudice and was then excluded was afterwards admitted by the respondent, at the suggestion of his counsel, and is now before us.

The respondent, in his findings after the hearing, stated, in substance, that he had arrived at them without being influenced by bias or prejudice. The petitioners, however, insist that it is clear from the findings themselves, all of which were against the petitioners, that he must have been thus influenced.

Be this as it may, the decisive question, in our judgment, is whether, granting that the respondent *was* biased and prejudiced against the petitioners, this fact disqualified him, under the terms of the particular statutory section governing the hearing, from conducting the hearing and rendering decisions upon the charges which he had made.

It is clear from uncontradicted evidence introduced in the hearing that, as stated *supra*, the respondent had, in the

period between the beginning of the January 1939 session of the general assembly and the date when this act was passed, during all of which period he was the mayor of Providence, publicly and repeatedly made charges against the petitioners, as to their conduct as members of the board, the same as, or very similar to, the charges upon which he afterwards removed them; and that he had advocated, publicly and to the general assembly, that they either be removed from their offices by a statute or that he, as such mayor, be authorized by a statute to remove them.

We are fully convinced therefore that the general assembly, when it passed the act in question, and the governor, when he signed it, must have had full notice of whatever bias and prejudice the respondent had against the petitioners. Yet this act was framed and enacted into law; and it expressly provided that during the remainder of the year 1939 the mayor, *clearly meaning the respondent,* whose term of office included that year and the next, should have the power to remove any member of the board, for malfeasance, misfeasance or nonfeasance occurring during the years 1938 or .1939; that such order of removal should take full effect when it was filed; and that the mayor should have the power to fill the vacancy at once. It also provided, clearly and expressly, that upon the request of any member thus removed, the mayor should give him, within thirty days, a public hearing on the cause of removal. No provision was made for a hearing to be held by anyone but the mayor, or to be held before the removal took effect.

It is clear to us, under the circumstances, that the specific legislative intent in this act was that the respondent, as mayor of Providence, notwithstanding any bias and prejudice which he might have, should have the exclusive power to remove any of these petitioners and later, upon request, to hold the hearing, upon the cause or causes of removal stated by him in his order of removal, and then to determine

whether or not the removed petitioner or petitioners should be restored to office.

Therefore, we find that according to the terms of this act the respondent was not disqualified to hold the hearing and decide, upon the charges made, whether or not any of the removed members of the board should be restored to his former office. This finding is based on the statute itself and is not an application of the so-called "rule of necessity", which apparently has never been either applied or rejected by this court. Nor is it inconsistent with the opinion of this court in *Keenan* v. *Goodwin*, 17 R. I. 649, or in any case of which we are aware.

The petitioners strongly rely upon the case of *Narragansett Racing Assoc., Inc.* v. *Kiernan*, 59 R. I. 90, in which, in a *certiorari* proceeding, we quashed the decision and findings of the division of horse racing, in a hearing before such division of charges against the petitioner in that case, a corporation engaged in operating a race track under the supervision and control of the division. There the reason for the result reached by us was that at the hearing the chief of the division, who was the chairman at the hearing, had refused to entertain, and receive testimony in support of, a motion by the petitioner that by reason of bias and prejudice he should refrain from sitting at the hearing, as a member of the division, and passing upon the charges.

The distinguishing features of that case were that in the statutory provisions which created the division and defined its powers there was an express provision to the effect that before any order, other than an order to show cause, could be entered against a person or corporation which was subject to its control, the division must serve charges upon such person or corporation and give a hearing upon them; and there was no requirement, express or implied, that all the officials who were authorized to sit as a board, for the hearing of charges against any person or corporation subject to control

by the division, must be present at such a hearing. On the contrary, a majority of them, constituting a *quorum,* could act as the board, with full powers; and if the chief of the division had refrained from sitting at this particular hearing, there would still have been a *quorum* of the division present and empowered, under the statute, to conduct the hearing and decide upon the charges.

In that case there was no reason, as there is in the instant case, for concluding that it was the legislative intent that the official, who at the hearing was charged with bias and prejudice, should sit at any hearing irrespective of bias and prejudice on his part. On the other hand, our finding, above stated, that according to the terms of the statutory section here involved the respondent was not disqualified, and also the reasoning upon which it is based, are, we believe, strongly supported by the opinion in *Sharkey* v. *Thurston,* 268 N. Y. 123, 196 N. E. 766.

There the charter of the city of Lockport provided that "the mayor shall have power to remove any officer appointed under this act, for incompetency, neglect of duty, misconduct or inability to perform the duties of his office . . . but such removal must be founded on specific charges in writing, whereof a copy shall be furnished to such officer, and before such removal he shall have an opportunity to appear in person, or by counsel, and be heard in his defense." The mayor filed charges against the plaintiffs, who were police commissioners of the city, and notified them that these charges would be publicly examined and heard before him at a certain time and place.

On the ground that he was prejudiced against them, they procured an order of court prohibiting him from hearing the charges. This order was sustained by the appellate division of the supreme court, but was reversed and the proceeding was dismissed by the court of appeals.

At page 126, (767) that court says: "We assume that it conclusively appears upon the record that the Mayor has prejudged the guilt of the plaintiffs before he hears the plaintiffs in their defense. We assume further that the Mayor has determined that the chief of police should be removed and that he has stated, privately and publicly, that if the plaintiffs do not remove the chief of police, he will remove them. The question which the parties have sought to bring up for review is whether under these circumstances, the Mayor is disabled from hearing and passing upon the charges which he has himself preferred."

The court, at page 127, (768) held that the plaintiffs' right to a hearing was not based on common-law principles and was not guaranteed by the constitution, no matter of punishment being involved, but was derived solely from, and defined by, the statute, by which the mayor's power of removal was limited. The court then said: "Unless there is implicit in that statutory limitation, a condition that the Mayor may not conduct the hearing, unless he has an open mind, the plaintiffs have not shown any ground of complaint. Thus the question of whether prejudice by the Mayor disables him from hearing the charges he has preferred depends upon the proper construction of the statute."

The court then held that "when the statute clearly requires the hearing to be held before a designated administrative officer, and no other officer can hold the hearing, then the language of the statute may not be disregarded, nor the legislative intent defeated by holding that the officer is disqualified." It held that the statute in question should be so construed and added, on page 129, (768): "Even then the hearing is not futile. It requires formulation of the charge, and a public record of the defense presented. If the charge is substantial and the defense is not a conclusive proof of innocence, the statutory restrictions upon the power of removal are not overstepped."

On this general phase of the instant case the question still remains for consideration, whether the statutory enactment here involved is constitutional, if construed as we have construed it. We have discussed *supra* the constitutional provisions now relied upon by the petitioners and held them not applicable; and we cannot see how the construction which we have given to that enactment makes them applicable.

The general assembly of this state has very broad powers. It can, without any hearing or any stated cause, remove from their offices all the members of an existing board of police commissioners of the city of Providence and create a new board to perform all their functions. *City of Providence* v. *Moulton*, 52 R. I. 236, and cases cited therein. Yet city police commissioners as clearly perform state functions as do members of a city board of canvassers and registration. We find no constitutional ground for holding that the statutory provision governing this case, and construed as we have construed it, is not valid and enforceable. The question of whether or not it is in accordance with sound policy is for the general assembly, and not for us, to determine.

The only question left for consideration, as to each of the petitioners, is whether there was competent evidence supporting any of the findings by the respondent of malfeasance, misfeasance or nonfeasance against that petitioner. It is not for us to weigh such evidence. This is the established rule in this state as to *certiorari* proceedings. *Kavanaugh* v. *Paull*, 55 R. I. 41, 50, and cases cited; *Portuguese-American Social Club* v. *Costello*, 63 R. I. 4, 6 A. 2d. 717, 718, and cases cited.

The petitioners' counsel contend that, because these proceedings in *certiorari* are statutory, a different rule should prevail and that this court should weigh the evidence. They, however, cite no case supporting such a different rule and we have been able to find none. We are of the opinion that the intent of this statute, in providing for these proceedings, was that the established rule, above stated, should be applied.

We are of the opinion that clearly there was competent evidence supporting the finding made by the respondent as to each of the petitioners that such petitioner had committed a malfeasance in concurring with the others in the appointment of moderators, clerks and supervisors to serve at elections in districts in which they were not qualified electors, such appointments being in violation of the provisions of G. L. 1923, chap. 11, sec. 34, and chap. 49, sec. 3. Even if such appointments had become rather customary, this would be no excuse for a plain violation of a statutory requirement.

It is clear also that there was competent evidence in support of the respondent's finding as to each of the petitioners that such petitioner had not made reasonable efforts to remove from the lists of qualified voters the names of deceased persons and was therefore guilty of a nonfeasance. The same thing is true as to evidence of failure to make reasonable efforts to remove from the lists of qualified voters the names of persons who were disfranchised by the law of this state, because they had been sentenced to imprisonment for terms of more than one year and had never had rights to vote restored to them by legislative action.

There was also competent evidence in support of other findings against the petitioners. But there is no good reason for pursuing further this matter of competent evidence to support the respondent's findings. It is sufficient that, as to each of the petitioners, the respondent, as mayor, after a hearing which was, in our opinion, in accordance with the statutory provision governing this matter, sustained, on relevant and competent evidence, charges which he had made against such petitioner; and that he therefore refused to restore such petitioner to his former office.

Each petition is denied and dismissed.

*Hoyt W. Lark, David B. Lovell, Jr., Hart, Gainer & Carr,* for petitioners Molloy and Cahir.

*Voigt, Wright, Munroe & Clason, Howard B. Gorham, Ernst T. Voigt,* for petitioner Batchelder.

*William A. Needham,* City Solicitor, *Arthur H. Feiner,* Asst. City Solicitor, for respondent.