**Charles KENNEDY**

v.

**CUMBERLAND ENGINEERING COMPANY, INC.**

**No. 82–95–Appeal.**

Supreme Court of Rhode Island.

Jan. 19, 1984.

Richard A. Boren, Ralph Stokes, Abedon, Michaelson, Stanzler, Biener, Skolnik & Lipsey, Providence, for plaintiff.

Mark S. Mandell, Mandell, Aisenberg, Goodman & Schwartz, Ltd. and Leonard Decof, John S. Foley, Decof & Grimm, Providence, amicus curiae.

Michael G. Sarli, Robert W. Lovegreen, Hinckley & Allen, Providence, for defendant.

Dennis J. Roberts II, Atty. Gen., Faith A. LaSalle, Sp. Asst. Atty. Gen., intervenor.

## OPINION

**SHEA, Justice.**

The plaintiff appeals from the order for summary judgment entered against him in the Superior Court. The appeal raises the issue of the validity of G.L.1956 (1969 Reenactment) § 9–1–13(b), as amended by P.L. 1978, ch. 299, § 2, under the Federal and State Constitutions. We reverse the order for summary judgment and remand the case to the Superior Court for further proceedings.

The plaintiff, Charles Kennedy, filed a complaint in Superior Court on October 6, 1981, alleging that on or about October 16, 1978, three fingers on his right hand were amputated and a fourth finger fractured while he was using a machine manufactured by defendant, Cumberland Engineering. The machine was first sold for use by defendant in November 1969, and later was obtained by Service Color Corporation, plaintiff's employer.

In 1978 the General Assembly amended § 9–1–13 to require that claims for recovery of damages involving injury-causing products must be commenced "within ten (10) years after the date the product was first purchased for use or consumption." Section 9–1–13(b) reads:

> "Notwithstanding the provisions of subsection (a) of this section, an action for the recovery of damages for personal injury, death or damage to real or personal property, including any action based upon implied warranties arising out of an alleged design, inspection, listing or manufacturing defect, or any other alleged defect of whatsoever kind or nature in a product, or arising out of any alleged failure to warn regarding a product, or arising out of any alleged failure to properly instruct in the use of a product, shall be commenced within ten (10) years after the date the product was first purchased for use or consumption."

The defendant filed a motion for summary judgment and an affidavit from Stanley T. Gotham, a vice president of Cumberland Engineering, claiming that § 9–1–13(b) barred the action because plaintiff's complaint was filed more than ten years after the machine was first purchased. The Attorney General intervened in support of the motion for summary judgment because the constitutionality of a state statute was called into question by plaintiff in his objection to the motion. The trial judge granted the motion, and plaintiff appealed, alleging violations of the equal-protection and due-process guarantees of the Fourteenth Amendment to the United States Constitution and access to the courts protected by art. I, sec. 5, of the Rhode Island Constitution. Two amicus curiae briefs were filed in support of plaintiff's appeal.

## I

### APPLICABILITY OF ARTICLE I, SECTION 5, OF THE RHODE ISLAND CONSTITUTION

Article I, sec. 5, of the Rhode Island Constitution states:

> "§ 5. Remedies for wrongs—Right to justice.—Every person within this state ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which he may receive in his person, property, or character. He ought to obtain right and justice freely and without purchase, completely and without denial; promptly and without delay; comformably to the laws."

The defendant claims that this section is limited to a prohibition of the purchase and sale of justice. This interpretation, however, is too narrow and ignores the clear command contained in the first sentence.

Many of the cases in which this court has addressed art. I, sec. 5, of our constitution have dealt solely with the provision concerning the "purchase" of justice. *See Jones v. Aciz,* 109 R.I. 612, 289 A.2d 44 (1972), *appeal dismissed,* 409 U.S. 1094, 93 S.Ct. 704, 34 L.Ed.2d 678 (1972); *Lewis v. Smith,* 21 R.I. 324, 43 A. 542 (1899); *Perce v. Hallett,* 13 R.I. 363 (1881); *Spalding v. Bainbridge,* 12 R.I. 244 (1879); *Conley v.*

*Woonsocket Institution for Savings,* 11 R.I. 147 (1875); *Hudson v. Geary,* 4 R.I. 485 (1857); *Littlefield v. Peckham,* 1 R.I. 500 (1851). This does not, however, limit the application of art. I, sec. 5, to the "purchase" issue only. In each of the cases, the second sentence of section 5 was the only portion of article I dealt with because the only issue involved related to the cost or fee applied to one of the litigants. None of these cases gives any indication that this was the sole purpose of this constitutional provision.

■ Other cases of this court that have dealt with art. I, sec. 5, of the Rhode Island Constitution clearly show an intent to give broader, independent meaning and application to the first sentence. In the recent case of *Lemoine v. Martineau,* 115 R.I. 233, 342 A.2d 616 (1975), this court held that a statute excusing legislators from all court appearances while the Legislature is in session "flies in the face of the *constitutional command* found in art. I, § 5." (Emphasis added.) *Id.* at 240, 342 A.2d at 621. *Cf. Martin v. Hammond,* 89 R.I. 98, 151 A.2d 114 (1959) (the court analyzed, under R.I. Const. art. I, sec. 5, the trial justice's discretion in considering a motion for a continuance); *Molloy v. Collins,* 66 R.I. 251, 18 A.2d 639 (1941) (although rejecting the plaintiff's contention, the court recognized the application of the section to personal injuries). These cases are factually different from the case before us. However, they clearly point to a less-restrictive reading of the section than that urged by defendant. To hold otherwise would require that we ignore the entire first sentence of art. I, sec. 5. A basic premise of constitutional interpretation is that every clause must be given its due force, meaning and effect and that no word or section must be assumed to have been unnecessarily used or needlessly added. *Wright v. United States,* 302 U.S. 583, 588, 58 S.Ct. 395, 397, 82 L.Ed. 439, 442 (1938); *Williams v. United States,* 289 U.S. 553, 572–73, 53 S.Ct. 751, 757, 77 L.Ed. 1372, 1380 (1933); *Holmes v. Jennison,* 14 Pet. 540, 570–71, 10 L.Ed. 579 (1840).

We therefore conclude that an analysis of the present issue under R.I. Const. art. I, sec. 5, is appropriate.

## II

## ANALYSIS

■ Clearly, art. I, sec. 5, of the Rhode Island Constitution should not be interpreted to bar the Legislature from enacting any laws that may limit a party from bringing a claim in our courts. There are instances in which the Legislature permissibly placed reasonable limits or burdens on the parties' right to have their claims adjudicated by the courts. Statutes of limitation have been upheld as reasonable legislative determination of when to cut off a plaintiff's right to bring an existing claim. *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 463–64, 95 S.Ct. 1716, 1722, 44 L.Ed.2d 295, 303 (1975); *Young v. Park,* 116 R.I. 568, 573, 359 A.2d 697, 700 (1976). Reasonable filing fees also have been sustained as a permissible condition to a party's seeking to have his or her existing claim adjudicated. *Perce v. Hallett,* 13 R.I. 363 (1881).

■ The total denial of access to the courts for adjudication of a claim even before it arises, however, most certainly "flies in the face of the constitutional command found in art. 1, § 5," *Lemoine v. Martineau,* 115 R.I. at 240, 342 A.2d at 621, and to hold otherwise would be to render this constitutional protection worthless. To prohibit court access absolutely for a generally recognized claim to a class of plaintiffs merely because they were injured by a product more than ten years old not only is irrational, in our opinion, but also flies in the face of even minimal constitutional protection mandated by art. I, sec. 5. As we stated in *Boucher v. Sayeed,* R.I., 459 A.2d 87, 93 (1983), in which we struck down a statute that treated medical-malpractice plaintiffs differently from tort plaintiffs as a whole, "The statute constitutes special class legislation enacted solely for the benefit of specially defined defendant(s) * * *." Even where this court has upheld reasonable limi-

tations, it has stopped short of allowing absolute bars to court access (*e.g. Spalding v. Bainbridge,* 12 R.I. 244 (1879) (plaintiff's inability to furnish surety for costs because of poverty held not sufficient to bar his action in court)).

In *Fournier v. Miriam Hospital,* 93 R.I. 299, 175 A.2d 298 (1961), this court found that a statute granting immunity to charitable institutions did not violate art. 1, sec. 5. In so holding, this court noted the Legislature's power to alter the substance of the common law. This case, however, is not applicable here. The immunity statute did not deprive the plaintiffs in *Fournier* of their day in court because agents, servants, and employees of a hospital remained liable for their torts. Rather, the statute prevented the plaintiffs from using the common-law theory of respondeat superior to reach the defendant hospital.

This statute, on the other hand, completely denies products-liability claimants of their day in court, notwithstanding the merits of their claims and the direct liability of the potential defendants. Products-liability claimants injured by products more than ten years old are left with no forum in which to bring their claims. If the constitutional guarantee of right of access to the courts is to have any meaning, this statute must be struck down.

In the present case, plaintiff alleges that he was injured on October 16, 1978, by a machine approximately nine years after it was first sold for use by defendant. The applicable statute of limitations (three years for personal injuries, § 9–1–14) gave defendant until October 16, 1981, to file his complaint, which he complied with by filing October 6, 1981. Yet, unknown to him, his right to bring the claim ceased in November 1979 (ten years after the purchase of the injury-causing machine), because of the provision of § 9–1–13(b).

The plaintiff was not even aware that his suit was barred until he filed suit and learned through answers to interrogatories and from affidavits the date of the sale of the injury-causing machine. Parties in the future who wish to ensure their right to redress for injuries would be forced to file suit the day of the injury, but even then they may be too late. They would be totally unaware of when the clock began to run or even if it had already run out.

This court has invalidated bars to claims until the injured party at least discovered, or should have discovered, his or her injury.

"It would, in our opinion, be manifestly unjust to bar the enforcement of injury claims brought by a plaintiff who was not, nor could not have known that he was, the victim of tortious conduct because the consequent harm was unknowable within two years of the negligent act.

\* \* \* \* \* \*

"[T]o preclude a person from obtaining a remedy simply because the wrong of which he was the victim did not manifest itself for at least two years from the time of the negligent conduct, is *clearly inconsistent with the concept of fundamental justice. To require a man to seek a remedy before he knows of his rights, is palpably unjust.*" (Emphasis added.) *Wilkinson v. Harrington,* 104 R.I. 224, 237–38, 243 A.2d 745, 752–53 (1968). *See* Prosser, *Handbook of the Law of Torts* § 30 at 144 (4th ed. 1971).

As the New Hampshire Supreme Court stated in *Heath v. Sears, Roebuck & Co.,* 464 A.2d 288, 295 (N.H.1983):

"The twelve-year limit is unreasonable because the mere purchase of pills produced by a drug manufacturer in California, or of a defective automobile made in Michigan, does not place the consumer on notice of a hidden defect injurious to his health or safety. When product defects lead to injury, our law has long provided for recovery without regard to when the substance or object was made or placed into the national or international stream of commerce. This is particularly important in cases where the injuries may not clearly manifest themselves until years later, such as the clear-cell adenocarcinomas found in the daughters of mothers

who twenty or more years previously took a female estrogen pill commonly known as DES (diethylstilbestrol). *See, e.g., Bichler v. Eli Lilly and Co.,* 55 N.Y.2d 571, 577–78, 436 N.E.2d 182, 184, 450 N.Y.S.2d 776, 778 (1982)."

Similarly, in the instant case Charles Kennedy's right of access to the court is absolutely barred before the running of the applicable statute of limitation. The plaintiff was barred from bringing his action before he was able to discover the time frame that was applicable to his rights. It would be manifestly unjust and inconsistent with art. I, sec. 5, to bar plaintiff's right to access to the courts absolutely.

The harshness of § 9–1–13(b) is further highlighted and intensified when one hypothesizes about its application in other similar situations. Plaintiffs may be absolutely barred from court through no carelessness or fault of their own because they were injured by products that did not manifest their defects until after they were ten years old. Furthermore, plaintiffs would be barred from recovery because they were injured by products that continually injured people because of defective designs or construction when the manufacturers determine it more economical to allow the product to stay in the field of commerce until the ten-year bar applies than to correct the defect. Finally, as may be the case in this instance, a product with a life expectancy much greater than ten years can unfairly enjoy a total immunity from the effect of its defect for a great part of the product's useful life. The application of this statute to this plaintiff is no less harsh and unjust.

States with similar constitutional provisions have also struck down this type of statute. The Alabama court stated in *Lankford v. Sullivan, Long & Hagerty,* 416 So.2d 996, 1004 (Ala.1982) (Torbert, C.J., concurring specially):

"Statutes of repose * * * make an unreasonable distinction between similarly situated manufacturers, in that the makers of long-lived products may be insulated from liability, while makers of short-lived products are singled out for product liability."

In *Battilla v. Allis Chalmers Manufacturing Co.,* 392 So.2d 874 (Fla.1980), the Supreme Court of Florida issued a per curiam opinion that invalidated a statute of repose in products-liability cases. The court did so "on the authority of *Overland Construction Co. v. Sirmons,* 369 So.2d 572 (Fla.1979), and [held] that, as applied to [that] case, [Florida's statute of repose] denies access to courts [in violation of] article 1, section 21 [of the] Florida Constitution." Article 1, sec. 21 of the Florida Constitution provides:

"The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay."

In *Overland Construction Co., supra,* the Florida court considered a statute of repose which applied to professional engineers, registered architects, and licensed contractors that had prohibited suits brought more than twelve years after construction was completed. It found that the statute violated the constitutional right of access to the courts.

Most recently the New Hampshire Supreme Court declared the state's products-liability statute of repose unconstitutional because it violated a state-constitutional provision similar to ours.[1] The court in *Heath v. Sears, Roebuck & Co.,* 464 A.2d 288 (N.H.1983), reasoned that because the right to recover was an important substantive right, the classification at issue in the statute of repose must be reasonable and substantially related to a legitimate legislative objective. The court held the statute unreasonable because it eliminates a plain-

**1.** Part 1, art. 14 of the New Hampshire Constitution provides:

"Every subject of this state is entitled to a certain remedy, by having recourse to the laws, for all injuries he may receive in his
person, property, or character; to obtain right and justice freely, without being obliged to purchase it; completely, and without any denial; promptly, and without delay; conformably to the laws."

tiff's claim before the wrong can be reasonably discovered. Quoting Judge Frank's dissent in *Dincher v. Marlin Firearms Co.,* 198 F.2d 821, 823 (2d Cir.1952), the court "condemned the 'Alice in Wonderland' effect" of the results:

> " 'Except in topsy-turvy land, you can't die before you are conceived, or be divorced before ever you marry, or harvest a crop never planted, or burn down a house never built, or miss a train running on a non-existent railroad. For substantially similar reasons, it has always heretofore been accepted, as a sort of logical "axiom," that a statute of limitations does not begin to run against a cause of action before that cause of action exists, i.e., before a judicial remedy is available to a plaintiff.' " *Heath,* 464 A.2d at 295–96.

Although we recognize the Legislature's wide scope of discretion to balance interests and enact laws accordingly, we believe that the Rhode Island Constitution forbids absolute bars to recovery for a recognized claim before the full tolling of the applicable statute of limitations. The plaintiff should have his day in court to show whether he is entitled to relief. The question of whether he will prevail must await a hearing on the merits in a court of proper jurisdiction.

Because we find that § 9–1–13(b) is inconsistent with art. I, sec. 5, of the Rhode Island Constitution, we need not address the remainder of the plaintiff's contentions concerning the validity of the statute under the Federal Constitution.

The plaintiff's appeal is sustained, and the papers in the case are remanded to the Superior Court for further proceedings.

MURRAY, Justice, dissenting.

While recognizing the legitimate concern of my colleagues in upholding a statute that effectively denies redress to the injured plaintiff, I must respectfully dissent upon the ground that G.L.1956 (1969 Reenactment) § 9–1–13(b), as amended by P.L.1978, ch. 299, § 2, is well within the legislative power as defined by our constitution.

The majority opinion's reliance upon article I, section 5, of our constitution to invalidate § 9–1–13(b) is both misguided and misplaced in light of the previous holdings of this court. That section, as the majority recognizes, has been most frequently employed by an indigent litigant to justify the prosecution of an appeal despite his failure to pay court filing fees or post surety. Such a litigant, however, has only been successful under this theory in cases in which his indigency was clearly established and the probable cause of his action was demonstrated by affidavit. *Spalding v. Bainbridge,* 12 R.I. 244, 244–45 (1879).

In only two of the seven "purchase" cases cited by the majority has such a rule been applied to afford relief to an indigent litigant. In all other cases, no violation of art. I, sec. 5 has been found. In our most recent "purchase" case, we declined to hold that art. I, sec. 5 provides any assistance to aid an indigent tenant in prosecuting an appeal from an adverse District Court judgment dispossessing him from his leasehold under § 9–12–12. *Jones v. Aciz,* 109 R.I. 612, 289 A.2d 44 (1972). In *Jones* we specifically noted that art. I, sec. 5, did not give an indigent tenant any protection at the appellate stage, given the clear legislative mandate to require the posting of a bond. To hold otherwise "would clearly fly in the face of the express language of the statute and would clearly constitute unreasonable judicial legislation." *Id.* at 627, 289 A.2d at 52.

In any event, these "purchase" cases have absolutely no relevance to this appeal. Historically, art. I, sec. 5's "purchase" clause was directly borrowed from the Magna Carta and "was designed to abolish, not fixed fees, prescribed for the purposes of revenue, but the fines which were anciently paid to expedite or delay law proceedings and procure favor." *Perce v. Hallett,* 13 R.I. 363, 364 (1881). In this sense, "the king seemed to sell justice and right to some and to delay or deny it to others." *Id.* at 365. In the case at bar, no showing is made that the enactment or practical application of § 9–

1–13(b) has caused certain wealthy or politically favored products-liability plaintiffs to obtain compensation for their injuries more frequently than their poorer or politically disadvantaged counterparts when both groups were injured by products placed in service ten years prior to their respective injuries. Indeed, such a showing could never be made since the only determinative factor under § 9–1–13(b) is the product's age and not the injured plaintiff's wealth or political position.

Consequently, the majority implicitly recognize that only the first sentence of art. I, sec. 5, may be used to strike down § 9–1–13(b) as unconstitutional. With this proposition I must agree, although I find no justification for their holding upon reading the previous decisions of this court in construing that sentence. My brethren cite *Lemoine v. Martineau,* 115 R.I. 233, 342 A.2d 616 (1975), as primary justification for the proposition that art. I, sec. 5's remedy clause has separate, independent meaning. A close reading of that decision, however, reveals that a second, autonomous theory was employed to invalidate the judicial-continuance statute at issue in that case. General Laws 1956 (1968 Reenactment) § 22–4–3. Legislative usurpation of the judicial function, specifically, the legislators' unconstitutional encroachment upon the judiciary's right to control its affairs in a manner fair and equitable to all litigants, *Lemoine,* 115 R.I. at 240, 342 A.2d at 621, was held to be an equally sufficient basis in itself to invalidate § 22–4–3.

Admittedly, the *Lemoine* court found it necessary to reach the art. I, sec. 5, remedy-clause issue and found it to apply. Extending that clause's application to the instant case, however, requires a herculean leap upon the part of this court which is clearly unwise given our infrequent and prior constructions of that section.

*Lemoine* involved a direct legislative disruption of an ongoing judicial trial and had nothing to do with products-liability suits or statutes of repose.

Section 9–1–13(b) creates no such disruption. It simply provides an affirmative procedural defense to a products-liability defendant in the answer to the complaint served upon him. At this stage there has been only minor discovery upon the part of either party, and no jury has been impaneled. Indeed, the role of the judiciary may have involved little more than the docketing of the plaintiff's case and the issuance of a summons to the defendant. In this context, it is inconceivable to conclude there has been anything but the most miniscule judicial involvement and certainly none in that degree that invoked constitutional sanction in *Lemoine.*

Additionally, I can see no parallel between a statute that provides absolute immunity from judicial appearances to legislators while in session and one simply regulating the time period in which actions may be brought against a manufacturer under a theory of strict liability in tort. The latter is concerned with simply modifying a right created by the common law, *see Ritter v. Narragansett Electric Co.,* 109 R.I. 176, 283 A.2d 255 (1971), whereas the former involves a direct legislative invasion of powers explicitly assigned to the judicial branch in our constitution. R.I. Constitution, art. III, art. X, sec. 1; *see State v. Garnetto,* 75 R.I. 86, 63 A.2d 777 (1949); *G. & D. Taylor & Co. v. Place,* 4 R.I. 324 (1856); *Opinion of the Justices,* 3 R.I. 299 (1854).

Similarly, I find no support for my brethren's application of art. I, sec. 5's remedy clause to this case in *Molloy v. Collins,* 66 R.I. 251, 18 A.2d 639 (1941), or in *Martin v. Hammond,* 89 R.I. 98, 151 A.2d 114 (1959). *Molloy* involved the removal of certain members of the Providence Board of Canvassers by the newly elected mayor. This court specifically found that the removal was entirely proper under art. I, sec. 5's remedy clause. Justice Moss stated that the deposed canvassers suffered no injuries to their respective persons or properties from their collective removal nor any damages to their respective characters from the

charges of malfeasance and nonfeasance of duties which caused their removal.

*Martin* involved the granting of a motion for continuance by a trial justice in an assumpsit action to resolve an apparent inconsistency upon previous motion rulings. Again, no violation of art. I, sec. 5, was found to have occurred. In light of both the inappositeness of the facts in those cases to the case at bar and the findings by our court of no constitutional violation in either one, I can find no precedent in either holding to justify the majority's result. Again, I must suggest that my brethren's application of art. I, sec. 5's remedy clause to this case is an unwarranted and radical departure from our prior holdings.

Even were I to concede that the case at bar provided an appropriate opportunity to invigorate constitutional analysis under art. I, sec. 5, I would be forced to conclude that § 9–1–13(b) is valid.

Article I, sec. 5's remedy clause is our constitution's guarantee of access to the courts for the redress of personal injuries. Such a guarantee in many respects has been interpreted as a due-process provision concerning itself with the destruction by statute of a vested right, *see* McGovern, *The Variety, Policy and Constitutionality of Product Liability Statutes of Repose*, 30 Am.U.L.Rev. 579 (1981) and Annot., 25 A.L.R. 4th 641 (1983).

Despite the plethora of decisions cited by my brethren in support of their holding, the highest courts of only five states have considered constitutional challenges to products-liability statutes of repose under the above theories. Of these five, the weight of authority is nearly balanced concerning their constitutionality.[2]

In *Bolick v. American Barmag Corp.*, 306 N.C. 364, 293 S.E.2d 415 (1982), the North Carolina Supreme Court gave explicit recognition to their state legislature's right to enact G.S. 1–50(6) (North Carolina's six-

year products-liability statute of repose) absent judicial interference: "It is for the Legislature, not for this Court, to impose, as a condition precedent to liability for personal injury, that the injury must occur within a specified time after the wrongdoing which is alleged to have been the proximate cause." *Bolick*, 306 N.C. at 370, 293 S.E.2d at 420–21 (quoting *Raftery v. Wm. C. Vick Construction Co.*, 291 N.C. 180, 190–91, 230 S.E.2d 405, 411 (1976)). "That the legislature has the authority to establish a condition precedent to what originally was a common law cause of action is beyond question. '[T]he General Assembly is the policy-making agency of our government, and when it elects to legislate in respect to the subject matter of any common law rule, the statute supplants the common law rule and becomes the public policy of the State in respect to that particular matter.'" *Bolick*, 306 N.C. at 370, 293 S.E.2d at 420 (quoting *McMichael v. Proctor*, 243 N.C. 479, 483, 91 S.E.2d 231, 234 (1956)).

Consequently, the *Bolick* court concluded that for those injuries subject to G.S. 1–50(6), the "plaintiff must prove the condition precedent that the cause of action is brought no 'more than six years after the date of initial purchase [of the product] for use or consumption.'" *Bolick*, 306 N.C. at 370, 293 S.E.2d at 420.

Similarly, our Legislature in enacting § 9–1–13(b) modified our own common-law rule created in *Ritter v. Narragansett Electric Co.*, 109 R.I. 176, 283 A.2d 255 (1971). Our Legislature now requires as a condition precedent to bringing a products-liability action that the action be brought no more than "ten years after the date the product was first purchased for use or consumption." Section 9–1–13(b). Using *Bolick* as our sole guide, I would be forced to conclude that such action was well within its constitutional power.

2. *See Lankford v. Sullivan, Long and Hagerty*, 416 So.2d 996 (Ala.1982); *Battilla v. Allis Chalmers Mfg. Co.*, 392 So.2d 874 (Fla.1980); *Dague v. Piper Aircraft Corp.*, 418 N.E.2d 207 (Ind.1981); *Heath v. Sears, Roebuck, & Co.*, 464 A.2d 288 (N.H.1983); and *Bolick v. American Barmag Corp.*, 306 N.C. 364, 293 S.E.2d 415 (1982).

Total reliance upon *Bolick* to uphold the constitutionality of § 9–1–13(b) is unnecessary, however, in light of this court's opinion in *Fournier v. Miriam Hospital,* 93 R.I. 299, 175 A.2d 298 (1961). In *Fournier,* the court specifically rejected plaintiff's argument that the Legislature may not abridge or modify a vested right derived from the common law under art. I, sec. 5's remedy clause. In that case, the court upheld the constitutionality of a statute that absolved hospitals supported in whole or in part by charitable contributions from liability for the negligence of their employees.

In *Fournier,* our court explicitly adopted the Alabama rule that " 'this provision [art. 1, sec. 5] does not undertake to preserve existing duties against legislative change made before the breach occurs.' " *Fournier,* 93 R.I. at 305, 175 A.2d at 301. "If it were otherwise the legislature would be barred from altering by way of restricting or extending the provisions of the common law in any manner, regardless of social changes and the experiences of man over centuries. It was never contemplated that the constitution should be so construed." *Id.* at 305, 175 A.2d at 301.

Notwithstanding this explicit policy mandate of *Fournier,* the majority now seek to ignore the doctrine of stare decisis and allow plaintiff to proceed under an even simpler theory of recovery than that employed by the plaintiff in *Fournier.* To do so without explicitly overruling the *Fournier* rule can only introduce confusion in what was previously a well-settled area of law.

Additional review of the other cases on point does not dissuade me from this conclusion. The holding in *Battilla v. Allis Chalmers Manufacturing Co.,* 392 So.2d 874 (Fla.1980), was a per curiam opinion invalidating Florida's twelve-year statute of repose for products-liability actions. *See* Fla. Stat. § 95.031 (1981). Only four judges of that distinguished body agreed that said statute unconstitutionally denied the plain-

tiff's access to the courts. They did so in essentially a one-sentence order. *Battilla,* 392 So.2d at 874.

There was a well-reasoned three-judge dissent in *Battilla* which would have upheld the constitutionality of § 95.031 as a sound legislative response to the "developing liability of a manufacturer." *Battilla,* 392 So.2d at 875 (McDonald, J. dissenting). Because of the extreme brevity of the *Battilla* court's per curiam opinion and the sounder reasoning of its dissent, I find that per curiam decision totally unpersuasive as authority to strike down § 9–1–13(b).

Similarly, I do not find the holding in *Lankford v. Sullivan, Long and Hagerty,* 416 So.2d 996 (Ala.1982), sufficiently convincing or analogous to the facts of this case to justify invalidating § 9–1–13(b). In *Lankford,* the Alabama Supreme Court defined as fundamental certain rights guaranteed by sec. 13 of the Alabama Constitution. That section states " '[t]hat all courts be open; and that every person, for any injury done him, * * * shall have a remedy by due process of law; and right and justice shall be administered without sale, denial, or delay.' " *Lankford,* 416 So.2d at 999. The majority of this court make no such finding that the right to sue for redress of personal injuries under a theory of products liability is fundamental for purposes of art. I, sec. 5.[3] Nor do they explicitly construe art. I, sec. 5's remedy clause as a due-process guarantee. Upon these two basic grounds, therefore, *Lankford* is fundamentally distinguishable from the case at bar.

Additionally, the Alabama Supreme Court employed a heightened standard of review in evaluating its ten-year statute of repose. It required that there be a substantial relationship between the "social evil" perceived by the Legislature and their attempt to eradicate it as a prerequisite to sustaining the statute. *Lankford,* 416 So.2d at 1001. I do not embrace such a rule. The better view is that the statute should be

---

**3.** This is not surprising in light of our holding in *Boucher v. Sayeed,* R.I., 459 A.2d 87 (1983), where we refused to expand the list of funda-

mental rights protected by the equal-protection clause in a case challenging the constitutionality of our medical-malpractice reform act.

sustained if it is not arbitrary and is reasonable. *See United States v. Carolene Products Co.,* 304 U.S. 144, 58 S.Ct. 778, 82 L.Ed. 1234 (1938); *Issarescu v. Cleland,* 465 F.Supp. 657, 660 (D.R.I.1979) and *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). Reasonableness will be presumed where the Legislature enacts economic measures. *Williamson v. Lee Optical of Oklahoma,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955). I refuse to awaken long-rejected notions of substantive due process[4] and adhere to the *Williamson* rule in cases of non-fundamental rights. Economic legislation is clearly the province of the Legislature. *See Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78–79, 31 S.Ct. 337, 340, 55 L.Ed. 369, 377 (1911).

The recent decision of *Heath v. Sears, Roebuck, & Co.,* 464 A.2d 288 (N.H.1983), is unpersuasive for this same reason. Again, a products-liability statute of repose was scrutinized by a court employing a higher standard of review than that traditionally afforded economic legislation.[5]

Additionally, the *Heath* decision is not cogent authority since it arose in a legal context critically distinct from the case at bar. In New Hampshire, a strong judicial philosophy prevails that makes certain rights of the common law sacrosanct. This philosophy prevented New Hampshire's Supreme Court from upholding a statute that completely abridged "the right to an adequate remedy * * * for the infringement of a right derived from the unwritten law." *Heath,* 464 A.2d at 294 (quoting *State v. Saunders,* 66 N.H. 39, 74, 25 A. 588, 589 (1889)). In this jurisdiction, the opposite judicial philosophy controls. Given our previous holding in *Fournier* explicitly rejecting the infinite perpetuation of common-law rights in the face of contrary legislative

action, we must sustain § 9–1–13(b)'s validity.

In my opinion, the correct result was reached in *Thornton v. Mono Manufacturing Co.,* 99 Ill.App.3d 722, 54 Ill.Dec. 657, 425 N.E.2d 522 (1981) and *Dague v. Piper Aircraft Corp.,* 418 N.E.2d 207 (Ind.1981), two cases virtually identical to the one at bar that embraced the *Fournier* policy.

In both cases, products-liability statutes of repose were upheld on the grounds that no vested rights of the plaintiff were destroyed by barring their rights to bring products-liability actions after the expiration of the statutory period. In *Thornton,* the Illinois Appellate Court stated that since the statute was enacted six months prior to plaintiff's injury, the statute "did not disturb a legal right which had already vested in the plaintiff at the time it came into effect." *Thornton,* 99 Ill.App.3d at 727, 54 Ill.Dec. at 660, 425 N.E.2d at 525. Thus, the plaintiff was not entitled to a remedy under Illinois's due-process clause because no vested right was abrogated by statute.

In *Dague,* the plaintiff's cause of action had also not yet accrued at the time that the Indiana products-liability statute of repose was enacted. Thus, she was "not in the position of having had a vested right taken from her." *Dague,* 418 N.E.2d at 213. In *Dague,* the Indiana Supreme Court specifically held that "there is no vested or property right in any rule of the common law." *Id.* at 213. They further held that since no cause of action had yet accrued under the act, there was "no cause of action existing," *Id.,* whatsoever when the plaintiff was injured. Consequently, the plaintiff again was not entitled to a "remedy" since there is "no vested right in a remedy" under Indiana's constitution. *Id.*

Similar analysis requires the conclusion that plaintiff's appeal in this case be denied.

---

4. *Lochner v. New York,* 198 U.S. 45, 25 S.Ct. 539, 49 L.Ed. 937 (1905).

5. The New Hampshire Supreme Court specifically held that the right to recover for personal injuries is an important substantive right and required that the statute's classification be reasonable and bear a fair and substantial relationship to the legislative objective. *Heath,* 464 A.2d at 294–95.

He was injured on October 16, 1978. Section 9–1–13(b) became law on May 12, 1978, without the signature of the Governor, and was made effective to all causes of action accruing after July 1, 1978. His claim did not vest, if at all, until more than five months after § 9–1–13(b) had become law and over three months following its effective date. Therefore, no vested right of plaintiff's was abrogated by the enactment of § 9–1–13(b). Consistent with the principles enunciated in *Dague, Thornton,* and *Fournier,* plaintiff is not entitled to a remedy since art. I, sec. 5 only protects vested rights. Where there has been no " 'breach of a legal duty,' " a plaintiff has " 'no legal claim for damages to [his] person * * *.' " *Fournier,* 93 R.I. at 305, 175 A.2d at 301.

One final point must be made concerning the majority's analysis. In their discussion, my brethren refer to Charles Kennedy's "right to bring th[is] action." This manner of characterizing the propriety of plaintiff's suit ignores the command of *Fournier, Dague,* and *Thornton,* which plainly demonstrates that no right created by common law is perpetually immune from legislative abrogation. Charles Kennedy did not possess a claim when he brought this suit. It did not exist since the Legislature had acted to eliminate it.

To hold otherwise would both castrate the Legislature in its ability to enact new laws in response to changing social and economic conditions and disrupt the proper balance of power between equal branches of government. As the Supreme Court of Pennsylvania noted in upholding a twelve-year statute of repose protecting architects and builders,

> "[t]his Court would encroach upon the Legislature's ability to guide the development of the law if we invalidated legislation simply because the rule enacted by the Legislature rejects some cause of action currently preferred by the courts. To do so would be to place certain rules of the 'common law' and certain non-constitutional decisions of courts above all change except by constitutional amendment. Such a result would offend our notion of the checks and balances between the various branches of government, and of the flexibility required for the healthy growth of the law." *Freezer Storage, Inc. v. Armstrong Cork Co.,* 476 Pa. 270, 281, 382 A.2d 715, 721 (1978).

Charles Kennedy's injuries invoke sympathy and compassion. However, emotional concern in the absence of a clear constitutional mandate does not justify ambiguity in the field of products liability.

In my view, policy determinations concerning economic issues are most properly made in the legislative arena where all the factors surrounding a particular problem may be weighed. When the Legislature is properly concerned with balancing competing interests to ensure a stable market for the manufacture of basic products and acts to do so by enacting a statute of repose, our inquiry should end. Our Legislature is at least as competent as this court in making economic policy determinations.

Upon the premises enunciated herein, I find the enactment of § 9–1–13(b) clearly within the Legislature's constitutional power. For this reason, I would affirm the ruling of the trial justice, and deny and dismiss the plaintiff's appeal.